**B.T. JONES, Plaintiff-Appellant,**

v.

**FLAGSHIP INTERNATIONAL d/b/a Sky Chefs, Defendant-Appellee.**

No. 85–1124.

United States Court of Appeals, Fifth Circuit.

July 9, 1986.

---

**1.** 509 F.2d 784, 789 (5th Cir). *cert. denied,* 423 U.S. 823 (1975).

**716**

Arkie Byrd, Little Rock, Ark., for plaintiff-appellant.

Benita Terry Jones, Dallas, Tex., pro se.

Justine S. Lisser, EEOC, Washington, D.C., for amicus curiae EEOC.

Thomas L. Case, St. Claire & Case, Dallas, Tex., David A. Schwarte, Airport, Tex., for defendant-appellee.

Before GEE, RUBIN and GARZA, Circuit Judges.

GARZA, Circuit Judge:

Benita T. Jones filed suit against her former employer, Flagship International ("Flagship"), under 42 U.S.C. §§ 2000 et seq. ("Title VII"), 29 U.S.C. § 206(d) (the "Equal Pay Act"), and 42 U.S.C. § 1981.[1] Flagship hired Jones, a licensed attorney in Little Rock, Arkansas, on July 30, 1979, as the company's "Manager of Equal Employ-

ment Opportunity (EEO) Programs". Jones' principal duties were to investigate charges of discrimination brought against the company, to represent the company before state and federal administrative agencies, to "conciliate" such discrimination charges, and to prepare an affirmative action plan. Jones initial salary of $21,000 was increased to $22,050 in November, 1979; to $23,153 in June, 1980; and to $27,000 on August 29, 1980.

At Flagship, Jones was placed under the supervision of Jared Metze, the Vice-President in charge of Personnel. Jones testified at trial that Metze subjected her to sexual harassment throughout her tenure at Flagship. According to Jones, she had been with Flagship for six weeks when she, Metze, and others went on a business trip to Chicago. Although Metze sent the others home, he and Jones continued on business to Detroit before returning to Dallas. Jones testified that Metze had been driving her home from the airport when she expressed concerns about the security of the hotel in Chicago in which they had stayed. At this point, Metze replied that his wife did not know he was back in town, and offered to take Jones to a "reputable" hotel in Dallas because she needed the "comfort of a man." Jones further testified that she had been so distressed by this incident that she left for Little Rock the next day, remained there for two weeks, and returned only upon Metze's promise that such an incident would not recur.

Jones then testified as to two further occurrences several months later. According to Jones, Metze propositioned her during a trip to San Francisco, and, during a trip to Denver, told her that she was "off the hook" because of a friend's interest in her. Jones stated that she rebuffed these as well as numerous other advances. Metze denied making any advances toward Jones.

A final "sex-related" incident occurred during Flagship's headquarters office Christmas party in December, 1981. On that occasion Kurt Elmer, the company's

---

**1.** Jones' claim under 42 U.S.C. § 1981 is not before this court on appeal.

Executive Chef and Vice-President, created figures of bare-breasted mermaids as table decorations. After receiving several complaints from female employees, Jones asked Metze whether a complaint should be made to Elmer. Metze proposed that Jones prepare a memo on the matter in order to avoid upsetting Elmer at the party. Jones later wrote such a memo, expressing the distaste of female employees for the figures, and received in reply a short polemic from an obviously unrepentent Elmer.

In addition to sexual harassment, Jones testified that she had been discriminated against in terms of pay and promotion while at Flagship. According to Jones, she made several complaints to Metze and Joseph Primavera, the company's Assistant Vice-President of Employee Relations and another of Jones' supervisors, concerning her pay since the spring of 1980. Jones testified that her grievances were ignored.

Jones mentioned her complaints to Peter Vygantas, the company's Senior Vice-President for Administration, during a meeting on January 27, 1982. Jones stated that during the course of the discussion Vygantas asked for a dollar amount of Jones' claims. Jones testified that, in order to get the necessary information for Vygantas, she had to derive salary data from the salary record cards of Metze and Catherine Sharp, her immediate predecessor; this, in turn, required Jones to copy data from their personnel files. Jones further testified that she continued to discuss her complaints, including sexual harassment, in subsequent meetings with Vygantas and Metze.

On February 3, 1982, Jones filed a charge with the EEOC, claiming discrimination in pay and sexual harassment. On February 11, Metze and Vygantas learned of the charge; the latter suspended Jones with pay on the following day. Vygantas testified that the action was necessary because of the conflict of interest created by Jones' position with the company. Shortly after Jones' suspension, Barbara McCaffrey, Metze's secretary, told Metze that she had seen copies of his personnel file in Jones' home. Metze informed Vygantas of this information, as well as information that Jones had solicited Dorothy Smith, another female employee, to file a charge of sex discrimination against the company. Vygantas also testified that he had learned from a security investigation interview conducted on March 22, 1986, that Jones had "invited" Patricia Love, another female employee, to "participate" in an action against the company during the course of numerous meetings between Jones and Love in January, 1982.[2]

As a result of this information, Vygantas terminated Jones' employment on April 15, 1982. According to Vygantas, this action was necessary because of the "lack of confidence the company had in her because she clearly had a conflict of interest in performing her duties," Jones' misuse of company property, *i.e.*, Metze's personnel file, in acquiring information concerning salaries, and Jones' attempt to encourage others to file charges against Flagship.[3] Jones then filed a second charge with the EEOC, charging unlawful retaliation.

**2.** Investigators of the Security Department of American Airlines, Inc., then Flagship's parent company, conducted the interview as part of Flagship's investigation into Jones' claims.

**3.** In a discharge letter to Jones, Vygantas summarized the basis of his action:

When commencing my investigation on the claim you had made, we learned that you had surreptitiously copied and taken home all or a part of a personnel file of Mr. J.R. Metze, your immediate supervisor. Further, we discovered that you had shown copies of a portion of the file to at least one employee at your home. When I asked you on February 18, about having Mr. Metze's file or a copy of

thereof, you denied it. Yet, you later admitted to the Company's Security Representatives investigating your charges against Mr. Metze that you had reproduced his payroll records. As you know, Sky Chefs General Rules of Conduct state:

27. The use of Company time, material or facilities for purposes not directly related to Company business, or the removal or borrowing of Company property without permission is prohibited.

Based on the above information, you have violated this rule. More importantly, your misconduct was a gross violation of the privacy of a co-employee. It is especially intolerable of a management employee such as

On October 1, 1982, Jones filed a "class action complaint" which alleged numerous claims on behalf of blacks, women and herself, including claims of discrimination in terms of pay and promotion, sexual harassment and retaliation. During the class certification proceedings, Flagship moved to dismiss the class allegations of Jones' complaint. The district court disqualified Jones as a class representative on the basis of *Doe v. A. Corp.*, 709 F.2d 1043, 1047–48 (5th Cir.1983) (holding that a corporation's former house counsel who had rendered legal advice concerning employee benefits to the corporation prior to his resignation was barred by his ethical obligations as a lawyer from prosecuting, as a class representative of other employees, benefits allegedly due under the corporation's pension and life insurance plans); on November 8, 1983, the court dismissed Jones' class allegations from the complaint.

On January 11, 1984, Jones sought to amend her complaint to include additional defendants, to plead state law claims for invasion of privacy, defamation, intentional infliction of emotional distress, and to add other federal claims under 42 U.S.C. §§ 1985, 1986. By order dated February 1, 1984, the district court denied Jones' leave to amend. Following trial, which commenced on March 12, 1984, and concluded on March 15, 1984, the district court, in its Memorandum of Decision and Judgment, dated January 24, 1985, entered judgment for Flagship. This appeal followed.

## THE NATURE OF JONES' CLAIMS

Jones' claims at trial were grounded on racial and sexual discrimination. The dis-

trict court found that there was "not the slightest hint that race was even a factor in any of Flagship's employment decisions regarding Jones." It is well established that such a finding is final unless clearly erroneous. F.R.Civ.P. 52(a). A finding is not clearly erroneous unless "the reviewing court on the entire evidence is left with a definite and firm conviction that a mistake has been committed." *Anderson v. City of Bessemer City, N.C.*, 470 U.S. 564, 105 S.Ct. 1504, 1511, 84 L.Ed.2d 518 (1985) (quoting *United States v. United States Gypsum Co.*, 333 U.S. 364, 394–95, 68 S.Ct. 525, 541, 92 L.Ed. 746 (1948)). By contrast, a district court's legal conclusion is subject to an appellate court's plenary review.

Jones has abandoned her race discrimination claims, and, on appeal, argues that the district court erred in failing to find sex-based discrimination in terms of pay and promotion, sexual harassment and retaliation. Jones also claims that the court abused its discretion in denying her leave to amend her complaint. Finally, the Equal Employment Opportunity Commission ("EEOC"), as *amicus curiae*, contends that the court erred in not finding retaliation on Flagship's part.

Most of Jones' complaints fall under Title VII. It is well settled that in a suit arising under Title VII the ultimate burden rests upon the plaintiff to prove, by a preponderance of the evidence, unlawful discrimination.

First, the plaintiff has the burden of proving by the preponderance of the evidence a prima facie case of discrimina-

---

yourself having for business purposes access to privileged information.

In the course of the Company's inquiry, it was also found while in your job of Manager— EEO Programs, before you had filed a claim personally, you had solicited other Sky Chefs' employees to file charges of discrimination against the Company. Such actions on your part are wholly at odds with the responsibilities of your job. As an Attorney, I hope you can appreciate the conflict of interest inherent in soliciting claims against the very client you represent.

Your misconduct in secretly reproducing your supervisor's personnel records, coupled with your lack of honesty about the subject, and your attempts to initiate and encourage other charges against Sky Chefs has rendered you ineffective in your present job. Therefore, as previously communicated to your Attorney by Sky Chefs' Legal Counsel, your employment with Sky Chefs was terminated as of April 15, 1982....

tion. Second, if the plaintiff succeeds in proving the prima facie case, the burden shifts to the defendant 'to articulate some legitimate, nondiscriminatory reason for the employee's rejection.' ... Third, should the defendant carry this burden, the plaintiff must then have an opportunity to prove by a preponderance of the evidence that the legitimate reasons offered by the defendant were not its true reasons, but were a pre-text for discrimination.

*Texas Department of Community Affairs v. Burdine,* 450 U.S. 248, 253–54, 101 S.Ct. 1089, 1093–94, 67 L.Ed.2d 207, 215 (1981) (citations omitted). *Accord, McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 804–05, 93 S.Ct. 1817, 1825, 36 L.Ed.2d 668 (1973).[4]

Because Jones' claims under Title VII allege "disparate treatment" on the basis of sex, the "factual inquiry" is "[whether] the defendant intentionally discriminated against the plaintiff." *United States Postal Service Board of Governors v. Aikens,* 460 U.S. 711, 715 (1983) (quoting *Burdine,* 450 U.S. at 253, 101 S.Ct. 1093). "In other words, is 'the employer ... treating some people less favorably than others because of their race, color, religion, sex, or national origin'." *Id.* (quoting *Furnco Construction Corp. v. Waters,* 438 U.S. 567, 577, 98 S.Ct. 2943, 2949, 57 L.Ed.2d 952 (1975)). With the foregoing standards and burdens in mind, we now turn to Jones' claims.

## I. *Sexual Harassment*

Sexual harassment is a form of employment discrimination prohibited by Title VII. *Simmons v. Lyons,* 746 F.2d 265, 270 (5th Cir.1984). In determining that Jones failed to make out a claim of sexual harassment, the district court referred to the "hostile work environment" and *"quid pro quo"* paradigms outlined in *Henson v. City of Dundee,* 682 F.2d 897 (11th Cir. 1982).

### a. *Hostile Work Environment*

In order to establish a claim against an employer for a hostile work environment, the plaintiff must show the following:

(1) *The employee belongs to a protected group, i.e.,* a simple stipulation that the employee is a man or a woman;

(2) *The employee was subject to unwelcome sexual harassment, i.e.,* sexual advances, request for sexual favors, and other verbal or physical conduct of a sexual nature that is unwelcome in the sense that it is unsolicited or unincited and is undesirable or offensive to the employee;

(3) *The harassment complained of was based upon sex, i.e.,* that but for the fact of her sex, the plaintiff would not have been the object of harassment;

(4) *The harassment complained of affected a "term, condition or privilege of employment," i.e.,* the sexual harassment must be sufficiently pervasive so as to al-

**4.** In *Burdine* the Supreme Court stressed the importance of the prima facie case in Title VII actions.

> The burden of establishing a prima facie case of disparate treatment is not onerous [and] serves an important function in litigation: it eliminates the most common nondiscriminatory reasons for the plaintiff's rejection. See *Teamsters v. United States,* 431 U.S. 324, 358, and n. 44, 97 S.Ct. 1843, 1866 n. 44, 52 L.Ed.2d 396 (1977). As the Court explained in *Furnco Construction Corp. v. Waters,* 438 U.S. 567, 577, 98 S.Ct. 2943, 2949, 57 L.Ed.2d 597 (1978), the prima facie case "raises an inference of discrimination only because we presume these acts, if otherwise unexplained, are more likely than not based on the consideration of impermissible factors." Establishment of the prima facie case in effect creates a

> presumption that the employer unlawfully discriminated against the employee. If the trier of fact believes the plaintiff's evidence, and if the employer is silent in the face of the presumption, the court must enter judgment for the plaintiff because no issue of fact remains in the case.[7]

>   \*    \*    \*    \*    \*    \*

> [7] The phrase "prima facie case" may denote not only the establishment of a legally mandatory, rebuttable presumption, but also may be used by courts to describe the plaintiff's burden of producing enough evidence to permit the trier of fact to infer the fact at issue. 9 J. Wigmore, Evidence § 2494 (3d ed 1940). McDonnell Douglas should have made it apparent that in the Title VII context we use "prima facie case" in the former sense.

> *Id.* 450 U.S. at 253–54, 101 S.Ct. at 1093–94.

ter the conditions of employment and create an abusive working environment;

(5) *Respondent superior, i.e.,* that the employer knew or should have known of the harassment in question and failed to take prompt remedial action.

*Id.* at 903–05.[5]

In concluding that Jones failed to establish a hostile work environment, the district court recounted Jones' testimony concerning her trips with Metze to Chicago and Denver and the Christmas party incident. The court found that the harassment complained of was insufficiently pervasive to alter a condition of Jones' employment and create an abusive working environment.[6] The court also noted that Jones failed to demonstrate that she had been adversely affected, and that she admitted to the absence of an adverse affect.

■ Jones contends that the district court erred in two respects. First, Jones asserts that "tangible job detriment" or adverse employment effect is not necessary to establish a prima facie case of sexual harassment under Title VII. We agree. *See e.g., Henson,* 682 F.2d at 901 ("under certain circumstances the creation of an offensive or hostile work environment due to sexual harassment can violate Title VII irrespective of whether the complainant suffers tangible job detriment"); *Bundy v. Jackson,* 641 F.2d 934, 943–44 (D.C.Cir. 1981) (that sexual harassment causing a hostile work environment is prohibited "follows ineluctably from numerous cases finding Title VII violations where an employer created or condoned a substantially [racially] discriminatory work *environment,* regardless of whether the complaining employees lost any tangible job benefits").

*See generally, Rogers v. E.E.O.C.,* 454 F.2d 234, 238 (5th Cir.1971). The trial court's ruling, however, is not to the contrary. We conclude, as did the court below, that while an employee need not prove tangible job detriment to establish a sexual harassment claim, the absence of such detriment requires a commensurately higher showing that the sexually harassing conduct was pervasive and destructive of the working environment.

In *Rogers, supra,* this court held that the state of psychological well-being is a term, condition, or privilege of employment within the meaning of Title VII: "One can readily envision working environments so heavily polluted with discrimination as to destroy completely the emotional and psychological stability of minority group workers." 454 F.2d at 238. However, the "mere utterance of an ethnic or racial epithet which engenders offensive feelings in an employee" does not affect the terms conditions, or privileges of employment to a sufficiently significant degree to violate Title VII. *Id.* "Whether sexual harassment at a workplace is sufficiently severe and persistent to affect seriously the psychological well-being of an employee is a question to be determined with regard to the totality of the circumstances." *Henson,* 682 F.2d at 904.

Jones argues that the district court's ruling, by reciting only three sex-related incidents, understates the pervasiveness of the sexual harassment she experienced at Flagship. According to Jones, the number of "sexually harassing" incidents reported establishes a sexually abusive and hostile working environment. Although we agree that the district court's ruling fails to re-

5. In contrast to the role of the "prima facie case" in the typical disparate treatment context, the case of sexual harassment that creates an offensive environment does not present a factual question of intentional discrimination which is at all elusive. Except in the exceedingly atypical case of a bisexual supervisor, it should be clear that sexual harassment is discrimination based upon sex. We therefore see no reason to suggest a specific prima facie case for the hostile environment claim. In trying these cases, the district courts should

employ normal principles of pleading and proof allocation. These principles may, in some cases, dictate that the allocation scheme vary in the individual case because of superior knowledge on the part of one party or other similar factors. *Id.* at 905, n. 11.

6. Implicit in the district court's conclusion is that Jones established the first three elements of the hostile work environment paradigm.

count in detail all of the incidents reported by Jones, we do not disagree with the court's conclusion that the conduct complained of was not sufficiently pervasive to constitute a hostile work environment.[7]

Jones argues, alternatively, that she did suffer adverse employment action and that the court's ruling to the contrary is clearly erroneous. Jones' claim is based on the following: (i) that the incident following her trip with Metze to Chicago resulted in severe distress; (ii) that she was adversely affected in terms of pay and promotion; (iii) that Metze increased her responsibilities when she complained; (iv) that Metze fabricated rumors about her; and (v) that the district court erred in finding that she had admitted to not being adversely affected. We find Jones' points unpersuasive.

(1) *The Trip to Chicago.* It appears that Jones confuses tangible job detriment with distress or psychological harm, an intangible detriment. Moreover, assuming that Metze's proposition caused Jones to return to Little Rock, Arkansas, we cannot discern from the record that this incident caused a tangible job detriment to Jones. On the contrary, Jones' testimony on this point reveals no adverse employment effect.

(2) *Pay and Promotion.* While an adverse employment decision in this regard would certainly amount to a tangible job detriment, the record is barren of any indication that Jones' complaints of sexual harassment were related to her equal pay and promotion complaints. This court cannot infer such a relationship.

(3) *Increased Responsibilities.* Although Jones claims that Metze increased her responsibilities after she complained of sexually harassing conduct, and refers this court to exhibits indicating those responsibilities, neither the exhibits nor the testimony in the record establish that Jones' responsibilities increased unduly in relation to her position at Flagship, or otherwise resulted from her sexual harassment complaints.

(4) *Rumors.* Jones' contention that Metze fabricated rumors about her throughout the company is without support. Metze's cross-examination testimony reveals that he listened to, and, at most, participated in company gossip about Jones.

(5) *Jones' Admission.* According to Jones, her "admission" to not being adversely affected by the sexually harassing conduct was included in a "fabricated" report prepared by security personnel in connection with a "retaliatory investigation" conducted for the purpose of finding an "ostensible" reason for terminating her employment at Flagship. While Jones' assertion may be credible, the trial court found to the contrary. We cannot say that this determination is clearly erroneous.

### b. *Quid Pro Quo*

An employer may not require sexual consideration from an employee as a *quid pro quo* for job benefits. *Henson,* 682 F.2d at 908. In *Henson* the court summarized the prima facie elements of a *quid pro quo* claim under Title VII.

In order to establish a violation of Title VII on grounds of sexual harassment of this kind, an employee must prove a number of elements, many of which are similar to the proof required to establish the existence of a hostile or offensive work environment:

(1) *The employee belongs to a protected group.*

(2) *The employee was subject to unwelcome sexual harassment.*

(3) *The harassment complained of was based upon sex.*

---

**7.** Jones has argued that the district court failed to take into account sexually harassing incidents reported by other female employees. Such testimony, though relevant in a class action suit, does not bear on Jones' individual claim of sexual harassment in the absence of evidence that such incidents affected Jones' psychological well-being. We note, moreover, that the district court did not credit Jones' testimony regarding the three major sex-related incidents as factual findings. The court's ruling appears to recount these incidents only to show that, even if true, such "harassment" was insufficiently pervasive to constitute a violation of Title VII.

(4) *The employee's reaction to harassment complained of affected tangible aspects of the employee's compensation, terms, conditions, or privileges of employment. The acceptance or rejection of the harassment by an employee must be an express or implied condition to the receipt of a job benefit or the cause of a tangible job detriment in order to create liability under this theory of sexual harassment.* As in the typical disparate treatment case, the employee must prove that she was deprived of a job benefit which she was otherwise qualified to receive because of the employer's use of a prohibited criterion in making the employment decision.

(5) *Respondeat superior.*

*Id.* at 909 (emphasis added) (citations omitted).

█ As discussed above, Jones failed to demonstrate that the incidents of which she complained resulted in a tangible job detriment. Similarly, the record fails to establish that Jones was required to accept sexual harassment as a condition to the receipt of a job benefit. The district court's finding that Jones failed to make out a *quid pro quo* claim for sexual harassment under Title VII is not in error.

We, therefore, affirm the trial court's ruling that Jones failed to establish her claim for sexual harassment under Title VII.

## II. *Jones' Pay and Promotion Claims*

### a. *Equal Pay*

Jones asserts that Flagship discriminated against her in pay under both the Equal Pay Act and Title VII. The former statute provides:

No employer having employees subject to any provisions of this section shall discriminate, within any establishment in which such employees are employed, between employees on the basis of sex *by paying wages to employees in such establishment at a rate less than the rate at which he pays wages to employees of the opposite sex in such establishment*

*for equal work* on jobs the performance of which requires equal skill, effort, and responsibility, and which are performed under similar working conditions, except where such payment is made pursuant to (i) a seniority system; (ii) a merit system; (iii) a system which measures earnings by quantity or quality of production; or (iv) a differential based on any other factor other than sex....

29 U.S.C. § 206(d)(1) (emphasis added).

Unlike Title VII, the burden of persuasion may shift from the plaintiff to the defendant in a suit under the Equal Pay Act.

The plaintiff's having made out a *prima facie* case has different ramifications under the Equal Pay Act than it has under Title VII. Under the Equal Pay Act, the plaintiff has the burden of proof to "show that an employer pays different wages to employees of opposite sexes 'for equal work on jobs the performance of which requires equal skill, effort, and responsibility, and which are performed under similar working conditions.'" *Corning Glass Works v. Brennan,* 417 U.S. 188, 195, 94 S.Ct. 2223, 2228, 41 L.Ed.2d 1, 10 (1974). If the plaintiff meets this burden, the burden of proof "shifts to the employer to show that the differential is justified under one of the Act's four exceptions." *Id.* at 196, 94 S.Ct. at 2229, 41 L.Ed.2d at 11. The exceptions are affirmative defenses on which the employer has the burden both of production and of persuasion. *Id.* at 197, 94 S.Ct. at 2229, 41 L.Ed.2d at 11. In other words, the burden shifts to the employer once a plaintiff shows that she was paid less than a male who was performing substantially the same job.

*Plemer v. Parsons-Gilbane,* 713 F.2d 1127, 1136 (5th Cir.1983).

█ Thus, in order to establish a claim under the Equal Pay Act, the plaintiff must show (1) that her employer is subject to the Act; (2) that she performed work in a position requiring equal skill, effort and responsibility under similar working conditions; and (3) that she was paid less than

members of the opposite sex. To establish "equal work", the plaintiff need only prove that the "skill, effort and responsibility" required in the performance of the jobs is "substantially equal." *Pearce v. Witchita County, City of Witchita Falls, Texas Hospital Bd.*, 590 F.2d 128, 133 (5th Cir. 1979). The Act necessarily requires a plaintiff to compare her skill, effort, responsibility and salary with a person who is or was similarly situated.

█ Jones based her pay complaints at trial on salary comparisons with four male employees whom she regarded as having comparable qualifications and responsibilities: Jared Metze, Ken Diebold, Jim Lawther and Joseph Primavera.

*Metze.* Jones compared her position to Metze's when the latter was "Manager of Personnel Relations" from April, 1972, to July, 1974. Metze's employee record card reveals that he earned $271.16 per week at his hire and $380.80 per week when promoted to Director of Public Affairs. Jones, meanwhile, earned $403.85 per week when hired in 1979. Thus, *assuming* that Metze's job was substantially similar to Jones' job as EEO Manager, the district court correctly concluded that Jones failed to establish that she earned less than Metze for equal work.

*Diebold.* Jones did not introduce Diebold's employee record card at trial. Consequently, even if the jobs of Jones and Diebold were substantially similar, Jones failed to show that she earned less than Diebold.

*Lawther.* Flagship hired Lawther as "Specialist in Employee Relations" three months before Jones joined the company. Lawther and Jones both started at $403.85

per week. Beginning in December, 1980, Lawther earned $20 per week more than Jones following his promotion to "Manager of Union Contract Administration." Lawther, who had been a high school teacher for 12 years, and a teachers' union representative for two years prior to his hire, was involved in collective bargaining negotiations and affirmative action programs at 46 locations. Based on our review of the record, we cannot disagree with the district court's finding that Jones and Lawther did not engage in jobs requiring "substantially equal skill, effort and responsibility."

*Primavera.* Jones testified that she had comparable qualifications to Primavera, one of her supervisors. However, as Jones' testimony demonstrates, Primavera's supervisory duties differed from Jones' EEO duties for the company. Although the court below did not address Jones' comparison with Primavera, we find that Jones and Primavera did not engage in substantially similar jobs.

█ In regard to her equal pay claim under Title VII, Jones was required to show that Flagship intentionally discriminated against her on the basis of her sex.[8] Jones first testified that the company refused to evaluate her job performance in accordance with company policy—evaluations, according to Jones, which would have resulted in a salary raise. Flagship, on the other hand, offered evidence to show that Jones' evaluation for 1981 was postponed due to Jones' two-month absence for sick leave. Metze testified that he delayed the process in order to help Jones obtain a positive evaluation. We cannot say, based on the record before us, that Flagship's failure to evaluate Jones in 1981 constituted discrimination in pay.

**8.** Title VII makes it an unlawful employment practice for an employer "to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin...." 42 U.S.C. § 2000e–2(a). In *County of Washington v. Gunther,* 452 U.S. 161, 101 S.Ct. 2242, 68 L.Ed.2d 751 (1981), the Supreme Court held that failure to allege or prove the equal work standard of the Equal Pay Act did not bar a plain-

tiff's cause of action under Title VII for discrimination in compensation. However, Title VII does incorporate that portion of the Equal Pay Act which permits dissimilar wages between men and women pursuant to (i) a seniority system, (ii) a merit system, (iii) a system which measures earnings by quantity or quality of production, or (iv) a differential based on any other factor other than sex. *See* 42 U.S.C. § 2000e–2(h).

■ Jones also testified that Flagship paid its employees at the "prevailing market rate" and that she earned less than that "rate." However, as the district court held, there is no requirement that an employer pay its employees at market rate. We must, therefore, affirm the district court's ruling that Jones failed to establish a discrimination in pay claim under either the Equal Pay Act or Title VII.

### b. Failure to Promote

■ In a suit alleging sex discrimination in an employer's failure to hire or promote, the plaintiff must prove the following to establish a prima facie case: (1) that she was a member of a protected group; (2) that she applied for a position for which she was qualified; (3) that she was rejected; and (4) that after she was rejected, the employer promoted, hired, or continued to seek a member of the opposite sex for the job. *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 93 S.Ct. 187, 36 L.Ed.2d 668 (1973); *Uveida v. Steves Sash & Door Co.*, 738 F.2d 1425, 1428 (5th Cir.1984), *cert. denied*, — U.S. —, 106 S.Ct. 791, 88 L.Ed.2d 769 (1986). *Plemer*, 713 F.2d at 1135. Where the plaintiff claims discrimination in promotion on the basis that jobs for which she was qualified were never posted or otherwise opened for formal applications, she must establish that the company had some reason or duty to consider her for the post. *Carmichael v. Birmingham Saw Works*, 738 F.2d 1126, 1133 (11th Cir.1984).

■ The district court found that Jones did not submit any evidence that she applied for a position for which she was qualified and rejected, and which was later filled by a male employee. Our review of the record, moreover, discloses no evidence

that Flagship had a duty or a legitimate reason to consider Jones for another position within the company. Consequently, we affirm the district court's ruling that Jones failed to make out a discrimination in promotion claim under Title VII.

### III. Retaliation

■ Jones and the EEOC argue that the district court erred in concluding that Jones had failed to make out a prima facie case of retaliation under § 704(a) of Title VII.[9] A plaintiff establishes a prima facie case of retaliation by showing (1) that she engaged in activity protected by Title VII; (2) that an adverse employment action occurred; and (3) that there was a causal connection between the participation in the protected activity and the adverse employment decision. *Irby v. Sullivan*, 737 F.2d 1418, 1426 (5th Cir.1984); *McMillan v. Rust College, Inc.*, 710 F.2d 1112, 1116 (5th Cir.1983).

The district court found that "Jones was clearly engaging in protected activity when she filed a charge of discrimination with the EEOC [and that] [h]er subsequent suspension and termination were adverse employment actions." The court further found, however, that Flagship's actions were taken, in part, as a result of Jones' solicitation of Patricia Love, a female co-worker:

"the evidence did establish that Jones gave aid and comfort, if not outright encouragement, to Pat Love to pursue her grievances against the company, at a time when Jones' duty was to discourage and defend such claims.... The court is persuaded, therefore, that Flagship had reasonable grounds, or in good faith thought it did ... for suspending and later terminating Jones." [10]

---

9. Section 704(a), 42 U.S.C. § 2000e–3(a), reads in pertinent part:

"It shall be an unlawful employment practice for an employer to discriminate against any of his employees ... because he has opposed any practice made an unlawful employment practice by this subchapter, or because he has made a charge, testified, assisted, or participated in any manner in an investiga-

tion, proceeding, or hearing under this subchapter."

10. Flagship asserted at trial that it also terminated Jones' employment for her solicitation of Dorothy Smith, another female co-worker, to sue the company, and for her breach of company policy in taking Metze's personnel file home. *See* footnote 3, *supra*. The district court found that Jones did not solicit Smith and did not

The court ruled that, as a consequence, Jones failed to establish the causation link between the charges and Flagship's actions, "*i.e.,* that absent retaliation her employment would have continued."

We conclude that Jones did meet her prima facie burden of showing that "but for" her filing of charges with the EEOC she would not have been suspended and terminated of her employment. We conclude, however, under the *McDonnell—Burdine* allocation of burdens and order of presentation of proof in a Title VII case, that Flagship presented evidence sufficient to rebut Jones' prima facie case and to support the district court's conclusion that Flagship did not engage in unlawful retaliation.[11]

Jones and the EEOC maintain that Flagship's suspension and subsequent termination of Jones' employment were based solely on Jones' action in filing discrimination charges with the EEOC. Jones and the EEOC point out that, since Flagship was unaware of any communication between Jones and Love at the time of Jones' suspension, the district court's conclusion, *viz.,* that Flagship had "reasonable grounds, or in good faith thought it did ... for suspending and later terminating Jones," is erroneous. While it is true that the court stated that Jones' suspension and termination were adverse employment actions, a review of the court's ruling reveals that it treated Flagship's conduct on the whole as a single adverse action. However, even if Jones' suspension is viewed as a *separate,* single adverse employment decision, as Jones and the EEOC urge, it does not follow that Flagship's action constituted unlawful retaliation.

The district court found that Jones was suspended "to avoid the conflict of interest inherent in Jones' representation of Flagship before the agency to whom she had made a complaint."[12] The EEOC contends that, notwithstanding the conflict of interest created, § 704(a) applies with equal force in protecting an employee charged

---

breach any "clearly stated" company policy, "at least as it pertained to Jones." The court's findings in this regard are not in error.

11. The Supreme Court has delineated the burden on a Title VII defendant in rebutting the plaintiff's prima facie case, and the plaintiff's subsequent and ultimate burden.

> The burden that shifts to the defendant, therefore, is to rebut the presumption of discrimination by producing evidence that the plaintiff was rejected, or someone else was preferred, for a legitimate, nondiscriminatory reason. The defendant need not persuade the court that it was actually motivated by the proffered reasons. See *Sweeney, supra,* [24] at 25, 58 L.Ed.2d 216, 99 S.Ct. 295 [at 295]. It is sufficient if the defendant's evidence raises a genuine issue of fact as to whether it discriminated against the plaintiff. To accomplish this, the defendant must clearly set forth, through the introduction of admissible evidence, the reasons for the plaintiff's rejection. The explanation provided must be legally sufficient to justify a judgment for the defendant. If the defendant carries this burden of production, the presumption raised by the prima facie case is rebutted, and the factual inquiry proceeds to a new level of specificity. Placing this burden of production on the defendant thus serves simultaneously to meet the plaintiff's prima facie case by presenting a legitimate reason for the action and to frame the factual issue with sufficient clarity so that the plaintiff will have a full and fair opportunity to demonstrate pretext. The sufficiency of the defendant's evidence should be evaluated by the extent to which it fulfills these functions.

> The plaintiff retains the burden of persuasion. She now must have the opportunity to demonstrate that the proffered reason was not the true reason for the employment decision. This burden now merges with the ultimate burden of persuading the court that she has been the victim of intentional discrimination. She may succeed in this either directly by persuading the court that a discriminatory reason more likely motivated the employer or indirectly by showing that the employer's proffered explanation is unworthy of credence. *See McDonnell Douglas,* 411 U.S. at 804–805, 36 L.Ed.2d 668, 93 S.Ct. 1817 [1825–1826].

*Burdine,* 450 U.S. at 254–56, 101 S.Ct. at 1094–95 (footnotes omitted).

12. Jones contends that because her duties were primarily "conciliatory" and "non-adversarial," no actual conflict of interest was created by her actions. Although Jones' duty may have been to counsel discrimination claimants and to conciliate discrimination claims in a non-adversarial manner, it was her position as a representative of the company in EEO matters, not her methods, which created the conflict of interest.

with EEO responsibilities from retaliatory conduct.

We are well aware that the provisions of Title VII must be construed broadly in order to give effect to Congress' intent in eliminating invidious employment practices. *See generally Pettway v. American Cast Iron Pipe Co.*, 411 F.2d 998, 1004–07 (5th Cir.1969). Moreover, since the enforcement of Title VII rights necessarily depends on the ability of individuals to present their grievances without the threat of retaliatory conduct by their employers, rigid enforcement of § 704(a) is required. *Pettway*, 411 F.2d at 1007. *EEOC v. Kallir, Phillips, Ross*, 401 F.Supp. 66, 72 (S.D. N.Y.1975), *aff'd*, 559 F.2d 1203 (2d Cir.), *cert. denied*, 434 U.S. 920, 98 S.Ct. 395, 54 L.Ed.2d 277 (1977).

In assuming her position as Flagship's Manager of EEO Programs, Jones neither abandoned her right to be free from discriminatory practices nor excluded herself from the protections of § 704(a). In filing a charge against Flagship on the ground that the company had discriminated against her in terms of pay and sexual harassment, Jones was exercising a protected right under Title VII, as the district court found. *Pettway, supra.*

However, we are also well aware that, although eliminating discriminatory employment practices is the goal of Title VII, cooperation and voluntary compliance are the preferred methods of promoting that goal. *See generally, Alexander v. Gardner-Denver Co.*, 415 U.S. 36, 44, 94 S.Ct. 1011, 1017, 39 L.Ed.2d 147 (1974). An employer has a strong interest in having an opportunity to settle equal employment disputes through conference, conciliation and persuasion before an aggrieved employee

resorts to a lawsuit. In *St. John v. Employment Development Dept.*, 642 F.2d 273 (9th Cir.1981), the court noted that a conflict of interest created by an EEO employee's filing of charges with the EEOC could justify adverse employer action: "It may be that the fundamental policies of Title VII require that voluntary compliance be encouraged by allowing an employer's transfer of a complaining employee to a position without EEOC contact, but otherwise equivalent." *Id.* at 275.[13]

In the instant case Vygantas, the Flagship officer responsible for Jones' suspension and discharge, testified that he suspended Jones with pay pending reassignment and an investigation of her claims. The EEOC notes that, unlike the situation contemplated in *St. John*, Jones was never reassigned and was barred from Flagship's premises and educational seminar functions. Jones and the EEOC contend that Flagship's conduct following Jones' claims against the company, indicate that Flagship's sole intention was to fire Jones for exercising her rights under Title VII.

We need not address ourselves to the extent to which an employer may act in relieving an employee of her EEO duties without running afoul of § 704(a), or to whether Flagship's response, if based on Jones' filing of charges *alone*, was sufficiently excessive to constitute unlawful retaliation. The record establishes that Jones' filing of charges with the EEOC was not the *sole* reason for Flagship's action at the time of suspension. Vygantas testified that he suspended Jones with pay not only for the conflict of interest stemming from her position as an EEO officer, but for Jones' plan to initiate a class action suit against the company.[14]

---

**13.** The Ninth Circuit grounded this possible exception to § 704(a) on the "business necessity" doctrine of *Griggs v. Duke Power Co.*, 401 U.S. 424, 431, 91 S.Ct. 849, 853, 28 L.Ed.2d 158 (1971). In *Griggs* the Supreme Court held that employment practices which are discriminatory in operation are not prohibited if the employer shows they are related to job performance, *i.e.* that they are required by "business necessity." *Id. See Prewitt v. United States Postal Service*, 662 F.2d 292, 306 (5th Cir.1981). The Tenth

Circuit has also held that business necessity may justify retaliation. *See Barela v. United Nuclear Corp.*, 462 F.2d 149, 152, n. 5 (10th Cir.1972) (apparently accepting business necessity as an appropriate defense in principle, but holding that it had not been established).

**14.** Vygantas' testimony reads in pertinent part:
[Direct Examination]

Although we realize that the district court did not identify in its ruling Jones' conduct in this regard as a separate basis to justify Flagship's action, a review of the entire record leaves no doubt that the court considered the evidence of Jones' solicitation of Pat Love against the background of Jones' attempt to file a class action suit. Flagship's belief of Jones' plan to file a class action claim on the date of her suspension, and its subsequent belief of Jones' attempt to solicit others, including Pat Love, to sue or to join Jones in suing the company, will be discussed jointly.

Jones and the EEOC argue that the district court never found that Jones actually solicited Love, but merely that Jones "gave aid and comfort, if not outright encouragement, to Pat Love to pursue her grievances against the company at a time when Jones' duty was to discourage and defend such claims...." Jones and the EEOC maintain that a company's EEO officer has no duty to discourage discrimination claims, and, moreover, is expected to give aggrieved employees "aid and comfort" as a means of conciliating discrimination disputes. While we do not take issue with Jones' conciliatory role, we view this contention as one taken out of context. It is clear from the lower court's decision, when read on the whole, that the court was referring to solicitation in the form of aid and comfort and encouragement. We will not quibble with the district court's choice of words where the meaning is apparent.

The EEOC next argues that Jones' "aid and comfort" of Love constituted lawful opposition to a "practice made an unlawful employment practice by [§ 704(a)]."[15] 42 U.S.C. § 2000e-3(a). We agree that employee opposition to discriminatory employment practices directed against a fellow employee may constitute activity protected under § 704(a). In *Berg v. LaCrosse Cooler Co.*, 612 F.2d 1041 (7th Cir.1980) the court held that it is a violation of § 704(a) to fire an employee because he opposed discrimination against a fellow employee, even if he was mistaken and there was no discrimination. *See also, Rucker v. Higher Educational Aids Bd.*, 669 F.2d 1179, 1182 (7th Cir.1982) (holding that it is unlawful to

Q. Now, did there come to be a time where you made the determination to send Mrs. Jones home?

A. Yes.

Q. Tell me how you came to that determination.

A. If I recall the events correctly, on the 11th of February I was informed that a charge had been filed and identified what the charge was. I invited her to come up to my office, and I raised some questions about in view of the fact that she had sought a solution of her claim with the agency that she was representing Sky Chefs, I felt that that was a conflict of interest and similarly saying to her, Seems to me you have a conflict of interest on this situation. She at my perception understood that. It could be that with respect to her issues she would have a conflict of interest. *I also had been told by Mr. Metze while the charge was being filed he had a call from her attorney, Mr. Walker, who said I'd like to settle this before we file a class action suit in view of the fact of a class action suit that is beyond just her representation.*

\*    \*    \*    \*    \*    \*

[Cross-Examination]

Q. Let me be sure of your position on the conflict that the charge presented to you. Did you testify that you saw a basic conflict there?

\*    \*    \*    \*    \*    \*

A. There was a conflict in the sense that she was responsible to represent to the EEO commission and other third parties, governmental parties, Sky Chef and she had sought—she had sought an answer—I don't know the proper legal terms for it with that very commission. So therefore, it was my judgment that she could not effectively represent the company, and in addition I was told by Mr. Metze a day or two before, even three of four days before—

Q. Was it two days before or three or four?

A. I cannot exactly tell you, but it was before. *It was before the 11th, that he had a telephone conversation with her attorney who said he would like to settle this before this develops into a class action suit.*

Q. Let me ask you this then. I thought you testified on direct that you sent her home because of the basic conflict that the charge represented. *Are you saying there were other reasons why you sent her home?*

A. *Yes, there were two reasons....*

(emphasis added).

**15.** According to Jones, Love had also been propositioned by a male manager.

retaliate against an individual who opposed discrimination against a co-worker).

However, unlike the employees in *Berg* and *Rucker,* Jones was an employee charged with representing her company on equal employment matters. As the EEOC concedes, some conduct, even if in sincere opposition to unlawful employment practices under Title VII, may be so disruptive or inappropriate as to fall outside the protections of § 704(a). "There may arise instances where the employee's conduct in protest of an unlawful employment practice so interferes with the performance of his job that it renders him ineffective in the position for which he was employed. In such a case, his conduct, or form of opposition, is not covered by § 704(a)." *Rosser v. Laborers' International Union, Local 438,* 616 F.2d 221, 223 (5th Cir.), *cert. denied,* 449 U.S. 886, 101 S.Ct. 241, 66 L.Ed.2d 112 (1980). In determining whether particular conduct constitutes activity protected under § 704(a), this circuit has required a balancing test: "[T]he courts have required that the employee conduct be reasonable in light of the circumstances, and have held that 'the employer's right to run his business must be balanced against the rights of the employee to express his grievances and promote his own welfare'." *Jeffries v. Harris County Community Action Assoc.* 615 F.2d 1025, 1036 (5th Cir. 1980) (quoting *Hochstadt v. Worcester Foundation for Experimental Biology,* 545 F.2d 222, 223 (1st Cir.1976)). *Accord, Payne v. McLemore's Wholesale & Retail Stores,* 654 F.2d 1130 (5th Cir.1981), *cert. denied,* 455 U.S. 1000, 102 S.Ct. 1630, 71 L.Ed.2d 866 (1982).

The EEOC maintains that Jones' dealings with Love did not harm Flagship. We disagree. As Flagship's Manager of EEO Programs, Jones necessarily played a cru-

cial role in equal employment matters involving the company. Jones knew of Flagship's position in discrimination cases filed against the company and acted as its representative before administrative agencies, including the EEOC. The need to settle discrimination claims through the process of cooperation and conciliation necessarily required Flagship to repose great confidence in its EEO personnel, in general, and Jones, in particular.

Jones' action in (1) filing a discrimination suit against Flagship, (2) suggesting that a class action suit would follow, and (3) soliciting or inviting others to sue or join in a suit against the company not only rendered Jones ineffective in the position for which she was employed, but critically harmed Flagship's posture in the defense of discrimination suits brought against the company. Moreover, Jones' right to express her grievances and promote her own welfare did not depend on others joining in her suit. We conclude, therefore, that under the aforementioned "balancing test" Jones' conduct in soliciting or inviting others to join in her discrimination claim,[16] coupled with her expressed intent to serve at the vanguard of a class action suit, was not protected under § 704(a) and provided Flagship with a nondiscriminatory basis upon which to suspend and discharge Jones.

Flagship, having met its burden of production by providing a legitimate, nondiscriminatory basis for its action, rebutted Jones' prima facie case and shifted the burden of persuasion to Jones to show that a discriminatory reason more likely motivated Flagship, or that Flagship's "proffered explanation is unworthy of credence." *Burdine,* 450 U.S. at 256, 101 S.Ct. at 1095. *McMillan,* 710 F.2d at 1116. The EEOC contends that the district court

---

**16.** Jones and the EEOC argue that Love's testimony cannot support the conclusion that Jones solicited or encouraged Love to sue or join in suing Flagship. Although Love's testimony is not the model of clarity, it is apparent that her understanding at the time of her discussions with Jones was that the latter had asked her to "join" in Jones' claim. The court below could

have properly determined that Love's understanding of Jones' request was communicated to Metze, who, in turn communicated this understanding to Vygantas. Jones' subsequent "explanation" to Love that Jones only wanted Love to testify as to her knowledge of Jones' claims came too late.

failed to assess whether the company's reasons were pretexts for discrimination. Specifically, the EEOC asserts that Flagship's investigation was conducted to uncover inculpatory evidence upon which to discharge Jones. According to the EEOC, the district court's finding that two of Flagship's proffered reasons—Jones' solicitation of Dorothy Smith and Jones' unauthorized use of Metze's personnel file—were not supported by the record, and Love's "confused" testimony, demonstrate the absence of any non-retaliatory motive.

The EEOC's point misses the mark. As discussed above, the court below was entitled to credit Love's testimony as supporting Flagship's position that Jones had engaged in solicitation, which, if true, would have jeopardized the company's posture with respect to defending discrimination claims. Moreover, Flagship need not have been correct in its basis for suspending and discharging Jones to show that its actions were motivated for non-retaliatory reasons. *See, e.g., De Anda v. St. Joseph's Hospital,* 671 F.2d 850, 854, n. 6 (5th Cir.1982) ("Whether St. Joseph was wrong in its determination that she should have checked is irrelevant, as long as its belief, though erroneous, was the basis for the termination"); *Dickerson v. Metropolitan Dade County,* 659 F.2d 574, 581 (5th Cir.1981) (Unit B) ("Even if DERM were wrong in its evaluation of the seriousness of the injury and the justifiability of the absences, it did not violate Title VII if it acted on the reasonable belief about the absences"). *Accord Jeffries, supra.* It is sufficient, as the district court held, that "Flagship had reasonable grounds, or in good faith though it did," for its suspension and termination of Jones' employment.[17]

We hold that, although Jones did establish a prima facie case of unlawful retaliation under § 704(a), *i.e.,* that but for her filing of charges with the EEOC she would not have been suspended and fired, Flagship presented sufficient, credible evidence to show that its actions were motivated by non-retaliatory reasons, and therefore, to rebut Jones' case. We hold, furthermore, that Jones failed to show that Flagship's reasons were a pretext for discrimination. Accordingly, we affirm the district court's ruling that Jones failed to establish that Flagship engaged in unlawful retaliation under § 704(a).

### IV. *Jones' Additional Claims*

Jones complains that the district court abused its discretion in denying her leave to amend her complaint 15 months after commencement of this case. Such a ruling is within the sound discretion of the trial court and, given the late date of Jones' motion, was not inappropriate.

### CONCLUSION

In sum, we conclude that Jones failed to show that the sexually harassing conduct complained of resulted in a tangible job detriment or affected a term, condition or privilege of employment to a degree sufficient to establish a sexually abusive or hostile work environment. We hold, therefore, that Jones failed to establish a prima facie case of sexual harassment under Title VII and affirm the district court's ruling in this respect. We also conclude that Jones failed to demonstrate (1) that she earned less than male employees for substantially equal work; (2) that Flagship intentionally discriminated against her in terms of pay; and (3) that Flagship either rejected her application for another position, or failed to advise her of an opening for which she was qualified. Accordingly, we hold and affirm the district court's ruling that Jones failed to establish disparate treatment in terms of pay and promotion under Title VII and the Equal Pay Act.

Finally, we conclude that, although Jones did establish a prima facie case of unlawful retaliation under § 704(a) of Title VII, un-

---

**17.** Jones and, to a lesser extent, the EEOC assert that the district court created, in effect, a "good faith" exception to § 704(a) in its ruling. This argument is also taken out of context. In using the term "good faith," the court merely denoted that Flagship had a reasonable belief that Jones had solicited Love.

der the *McDonnell-Burdine* allocation of burdens and order of presentation of proof, Flagship sufficiently rebutted Jones' case by adducing evidence that it suspended and fired Jones for non-retaliatory reasons. Moreover, we find that Jones did not demonstrate that the reasons proffered by Flagship were pretexts for discrimination. We, therefore, hold that Jones failed to show that Flagship engaged in unlawful retaliation under Title VII, and affirm the district court's ruling in this regard.

AFFIRMED.