# IN THE UNITED STATES COURT OF APPEALS
# FOR THE FIFTH CIRCUIT

_____

No. 01-60740
(Summary Calendar)

_____

RHONDA CLARK,

Plaintiff-Appellant,

versus

BALLY'S TUNICA, INC. a/k/a BALLY'S HOTEL AND CASINO;
and EDRIC BRAXTON,

Defendants-Appellees.

_____

Appeal from the United States District Court
for the Northern District of Mississippi
(2:00-CV-112)

_____

May 1, 2002

Before HIGGINBOTHAM, WIENER, and BARKSDALE, Circuit Judges.

PER CURIAM[*]:

Plaintiff-Appellant Rhonda Clark appeals the district court's order granting summary judgment to defendants-appellees Bally's Tunica, Inc. (Bally's) and Edric Braxton,[1] dismissing her Title VII claims for sexual harassment and creation of a hostile work

---

[*] Pursuant to 5TH Cir. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH Cir. R. 47.5.4.

[1] Although there is no individual liability under Title VII, Braxton was named as a defendant because Clark had also asserted state law tort claims against him. Clark has not appealed the dismissal of her state law claims.

environment.  Agreeing with the district court, we affirm.

## I.

### FACTS AND PROCEEDINGS

Clark's duties as a cashier at Bally's included providing coins to the employees who filled slot machines.  Braxton was a slot machine supervisor who, during work hours, was frequently present in the same area as Clark and had routine contact with her. As he only supervised slot machine attendants, Braxton had no supervisory control or direct authority over Clark.

At one point during their employment at Bally's, Braxton began making advances to Clark.  Over the course of one or two months, Braxton caressed Clark's hands, told her that she had "bedroom eyes," expressed his desire to kiss her all over, and told Clark to inform her mother that he would be her new son-in-law. Although Clark felt uncomfortable with Braxton's actions and remarks, she did not immediately report them to her superiors.

A few weeks later, as Clark was walking with a male co-worker, Braxton approached her, grabbed her by the arm, and informed her that he did not want her seeing other men.  On the next workday, Clark reported Braxton's actions to another slot machine supervisor, who, in response, advised Clark to report the incident to her immediate supervisor, Sue Cerbe.  After reporting the incident to Cerbe, Clark was directed to fill out an incident report, which Cerbe forwarded to Bally's Human Resource Department.

2

The day after receiving the incident report, Neil Davidson, a Bally's employment manager, began an investigation. This included interviews with Braxton, Clark, and other co-workers.

After Clark submitted her report and returned to work, there was one workday during which she was forced to come into contact with Braxton. According to Clark, Braxton gave her angry looks and snatched money out of her hands.

At the conclusion of Davidson's investigation, Bally's suspended Braxton for five days for failure to comply with a company directive during an investigation and for exercising poor judgment in his comments to his co-workers. Braxton was informed that his alleged conduct towards Clark was improper and unacceptable, and he was warned that retaliation against Clark or continued instances of improper behavior would result in further discipline, possibly including termination.

After Braxton was disciplined, Davidson phoned Clark to tell her that remedial action had been taken against Braxton. Davidson encouraged Clark to return to work, assuring her that her safety was not at risk and that if any further problems with Braxton should be reported, they would be dealt with. Clark nevertheless refused to return to work.[2] By her own admission, she did not receive harassing comments from Braxton after her complaint was filed. Rather, she cited ostracism by her other co-workers as the

---

[2] She maintains that she voluntarily quit, whereas Bally's maintains that she was fired after failing to return to work.

3

reason for refusing to return to work.[3]

Clark then filed an EEOC charge, and subsequently filed this suit against Bally's. The district court granted summary judgment in favor of Bally's, holding that Clark could not raise a genuine dispute of material fact on all necessary elements of her Title VII claim. Clark timely filed a notice of appeal.

## II.

## ANALYSIS

We review the district court's grant of summary judgment de novo.[4] As Bally's did not take any adverse employment action against Clark, her complaint must be treated as a hostile work environment claim.[5] We held in Jones v. Flagship International[6] that, to prevail on a hostile work environment claim, a plaintiff in Clark's position must prove that (1) she was a member of a protected class, (2) she was subjected to unwelcome harassment, (3) the harassment was based on sex, (4) it affected a term, condition, or privilege of her employment, and (5) her employer knew or should

---

[3] The alleged ostracism from her co-workers was apparently related to the filing of her incident report against Braxton.

[4] Fed. R. Civ. P. 56(c); Celotex Corp. v.Catrett, 477 U.S. 217 (1986).

[5] Casiano v. AT&T Corp., 213 F.3d 278 (2000).

[6] 793 F.2d 714 (5th Cir. 1986) (cited in Skidmore v. Precision Printing and Packaging Inc., 188 F.3d 606 (5th Cir. 1999)).

4

have known of the harassment but failed to take prompt remedial action.[7]

Regarding the fourth factor, Braxton's harassment must be sufficiently pervasive and severe as to alter the terms and conditions of Clark's employment. Although we are doubtful whether the seriousness and duration of Braxton's actions in this case rise to such an actionable level under Title VII, we assume, for the sake of argument, that they do. Even assuming, _arguendo_, that Clark could meet the fourth factor, however, we are convinced that she cannot raise a genuine dispute of fact as to the fifth factor —— employer scienter and inaction —— and therefore affirm the judgment of the district court.

The summary judgment evidence presented demonstrates that, on receiving Clark's incident report, Bally's immediately commenced and prosecuted an investigation. Within a week or two after commencing its investigation, Bally's concluded it and imposed a punishment on Braxton that was reasonably calculated to convey to

---

[7] _Id._ We note that after the Supreme Court's decisions in _Burlington Industries, Inc. v. Ellerth_ and _Faragher v. City of Boca Raton_, the _Flagship_ five-factor analysis is only applicable to cases involving harassment by a co-worker. This case presents somewhat of a hybrid: Although Braxton was not Clark's supervisor and did not possess direct authority over her, he was employed in a managerial role, which may have given him some measure of influence and weight with Clark's supervisors. Both parties and the district court, however, have analyzed this case under the _Flagship_ factors and we follow suit. In any case, even if the _Ellerth/Faragher_ analysis were to apply, we would reach the same result.

him that his conduct was improper and unacceptable, and that further conduct of that or a retaliating nature would result in more severe sanctions. Although Bally's did not fire Braxton, its remedial action was prompt and Clark was not sexually harassed by him afterwards, even in the one instance in which she worked near him after the filing of her complaint. Under these facts, Clark cannot maintain a hostile work environment claim against Bally's. Therefore, the district court's summary dismissal of her action was proper.

## III.

### CONCLUSION

For the foregoing reasons, the district court's grant of summary judgment in favor of Bally's is

AFFIRMED.