**Dr. Edward SENIGAUR**

v.

**BEAUMONT INDEPENDENT SCHOOL DISTRICT.**

**Civ. A. No. B–88–01096–CA.**

United States District Court,
E.D. Texas,
Beaumont Division.

April 3, 1991.

Mark T. McDonald, Houston, Tex., for plaintiff.

Robert J. Hambright, Orgain, Bell & Tucker, Tanner Hunt, Jr., Wells, Peyton, Beard, Hunt & Crawford, Beaumont, Tex., for defendant.

## MEMORANDUM OPINION

COBB, District Judge.

The plaintiff, Dr. Edward Senigaur (Senigaur), brings this suit against the Beaumont Independent School District (BISD) and individual defendants O.C. "Mike" Taylor (Taylor), former Superintendent; Joe Austin (Austin), Superintendent; and Bill Christian (Christian), former president of the BISD Board of Trustees (BISD Board). Senigaur alleges that he was denied various promotions and reassigned by BISD, in violation of 42 U.S.C. § 2000e et seq. (Title VII); 42 U.S.C. §§ 1981, 1983, and 1985; the Fourteenth Amendment to the United States Constitution; and the Texas state

tort of intentional infliction of emotional distress. Following a non-jury trial, this court enters the following findings and conclusions.

### FINDINGS OF FACT

Senigaur is a black citizen of the United States, and a resident of the City of Beaumont, Jefferson County, Texas. At all material times relevant to this action, Senigaur was an employee of BISD.[1] BISD is a political subdivision of the State of Texas, located in Beaumont, Jefferson County, Texas. It is charged with the operation and maintenance of a public school system within its boundaries. BISD is an employer within the meaning of Title VII. Taylor, Austin, and Christian are all sued in their official capacities. Senigaur has been an employee of BISD since 1958. He has held the following positions:

(1) Teacher, Blanchette & Pietcch Elementary Schools—1958–1969.

(2) Ombudsman—1969–1970.

(3) Assistant principal, Forest Park High School—1970–1979.

(4) Principal, Regina Howell Elementary School—1979–1985.

(5) Principal, Marshall Middle School—1985–1987.

(6) Principal, Bowie Middle School—1987–1989.

(7) Principal, West Brook 9th Grade Center—1989–1990.

Senigaur received a bachelor's degree in 1956, a master's degree in 1965, and a doctorate in education in 1981.

This court examines each claim raised by Senigaur, whether actionable or not, in an attempt to understand BISD's promotion practices.

Senigaur's first claim arose in 1978. He did not file any complaint with the Equal Employment Opportunity Commission (EEOC), and this claim is time-barred, but it is nevertheless illuminating. In 1978, while assistant principal at Forest Park High School, Senigaur applied for a promotion to the position of Assistant Superintendent for Administration. Although in none of these claims, including this one, was a significant pay increase involved, all but one of the challenged promotions involve movement to an administrative position from an in-school position.

Senigaur was denied the promotion to Assistant Superintendent. The position was awarded to Dr. Bill Boardman, a white candidate. Senigaur talked with then–Superintendent Taylor about Boardman's selection. Taylor told Senigaur that Boardman was selected because he had a doctorate. Senigaur at that time had a master's degree, but not a doctorate.

Relying in part on this representation, Senigaur went to night school in Houston, and earned his doctorate. He was awarded his degree in 1981. In 1983, armed with his doctorate, Senigaur applied for another promotion. He was again denied.

This second claim, arising in 1983, also was not actionable, but is illuminating. Senigaur applied for another administrative position, this time as Director of Personnel. Senigaur had a doctorate, and was at that time principal of Regina Howell Elementary School. Instead of Senigaur, Henry Hilgemeier, another white candidate, was selected for Director of Personnel. Hilgemeier did not have a doctorate, and had previously been Director of Vocational Education.

Senigaur's third claim, also not actionable, arose in 1984. That year, Senigaur applied for the position of Assistant Superintendent for Curriculum. A brief review of BISD's alleged promotion practice is appropriate here. BISD claims each vacancy is posted, applicants submit resumes, and applicants are interviewed by a committee. The committee then recommends a candidate from among the applicants to the Superintendent. If the Superintendent approves the candidate, the Superintendent

---

**1.** Originally, Senigaur was employed by the South Park Independent School District (SPISD). After SPISD and BISD merged under court order in August 1983, Senigaur was employed by BISD. This court treats his employment as continuous, whether with SPISD or its successor, BISD.

recommends the candidate to the Board. The Board then votes to offer the candidate the position.

In 1984, the position of Assistant Superintendent for Curriculum was posted. Senigaur and others applied and were interviewed by a committee. A recommendation was made by the committee to then-Superintendent Taylor. Taylor did not, however, make any recommendation to the Board. The position remained vacant the entire year. Interestingly, in 1984, the Board had a majority of black members.

In 1985, the racial composition of the Board changed, and a majority of the members were white. The position of Assistant Superintendent for Curriculum was not posted, and no interviews were held. In spite of this seeming absence of information, Taylor found a candidate to recommend to the Board to fill the vacant position of Assistant Superintendent for Curriculum. Taylor recommended a white woman named Shirley Ramey. Ramey did not have a doctorate, but the Board nevertheless approved offering Ramey the position.

This incident speaks clearly of Taylor's attitude throughout his term as Superintendent. When he didn't get the candidate he wanted, he simply left the position vacant for a year until a Board that would approve his desired candidate was in place. Unfortunately, this incident is not actionable.

Turning to Senigaur's first actionable claim, in 1986, he applied for a promotion to the position of Administrative Assistant for Secondary Schools. Senigaur was denied that promotion, and the position was awarded to Jerry Mallett, a white employee of BISD. At the time, Senigaur had received his doctorate and Mallett had not. This position was created after the death of Dr. Boardman, who had previously been promoted ahead of Senigaur, ostensibly because at that time Boardman had a doctorate and Senigaur did not.

Mallett had, however, years of experience as a high school principal, and had presided over the merger of two high schools. Senigaur had no experience as a high school principal. BISD was facing the prospect of merging two more high schools, and found Mallett's experience with an earlier merger weighed in favor of his selection.

In March of 1987, Senigaur filed EEOC Charge No. 330–87–1317, alleging BISD's selection of Mallett was racially discriminatory. The EEOC issued a right-to-sue letter on this charge on August 26, 1988.

Senigaur's second actionable claim arose in 1988, when he applied for a promotion for the administrative position of Director of Elementary Instruction. Senigaur had a doctorate, and at that point, had approximately twenty-one years of experience at the elementary and middle school levels. Senigaur, however, was not selected. Instead, the promotion was awarded to Ann Thacker, a white candidate. Thacker did not have a doctorate, but had spent some years as a Coordinator of Curriculum for grades K–3. The position of Director of Elementary Instruction involved administration of curriculum for grades K–8.

Senigaur did not file an EEOC charge challenging the BISD's selection of Thacker. Consequently, this claim is not actionable under Title VII, but is under the other causes of action the plaintiff raises.

In his third and final actionable promotion claim, Senigaur alleges BISD's selection of Terry Ingram (Ingram), a white person, as principal of West Brook High School was racially discriminatory. In 1989, an opening for principal of West Brook High School was posted. Senigaur, Ingram, and others applied and were interviewed.

In another exception to its alleged promotion practice, the applicatnts for this position were interviewed by not one, but three, committees—administrative, faculty, and student. At the time of this selection, Taylor had been replaced as Superintendent by Austin, but was still employed by BISD as a consultant to Austin. During the interview process, Taylor was at the school where the interviews were being conducted. Taylor advised one of the committee members, whom he saw on a break in the hallway, to return to the interview

room and choose Ingram. Taylor claims he was just joking, and the committee member says he was not influenced by Taylor's comment.

On November 24, 1989, Senigaur filed EEOC Charge No. 330–90–0399, complaining Ingram's selection was racially discriminatory. On May 18, 1990, the EEOC issued a right-to-sue letter to Senigaur on that charge.

In addition to the three promotions at issue in this lawsuit, Senigaur has also raised two claims of reassignment by BISD in retaliation for his filing of EEOC charges. Both these claims involve Senigaur's reassignment to other in-school positions within BISD.

The first challenged reassignment is Senigaur's 1987 transfer from Principal of Marshall Middle School to Principal of Bowie Middle School. This transfer occurred approximately four months after Senigaur filed his first EEOC ·charge, which was the charge challenging Mallett's selection as Administrative Assistant for Secondary Schools.

Senigaur learned of his reassignment to Bowie when, more than a week after he had returned to Marshall to begin the 1987–88 school year, a woman came into his office at Marshall to apply for a teaching position at Bowie. When Senigaur told her she was in the wrong school, she told him he was the principal at Bowie. When he called the Director of Personnel, Henry Hilgemeier,[2] Senigaur was told he had been reassigned to Bowie, effective immediately.

Hilgemeier told Senigaur he had been reassigned to give Senigaur a fresh start. Senigaur had had numerous difficulties with parents and faculty at Marshall during the 1986–87 school year, and a petition had been circulated by some parents, seeking Senigaur's removal.

Senigaur filed EEOC Charge No. 330–88–0258 on October 18, 1987, alleging his transfer was in retaliation for filing a previous EEOC charge. The EEOC issued a

right-to-sue letter on the retaliation charge on August 26, 1988.

Subsequent to the filing of this lawsuit, Senigaur was reassigned from principal of Bowie Middle School to principal of West Brook Ninth Grade Center (Little Brook). Senigaur became Principal of Little Brook in August of 1989. Senigaur also complains the reassignment was in retaliation for his filing of EEOC complaints, but has filed no EEOC charge on this reassignment. Senigaur has experienced some problems with faculty relations at Little Brook.

In the more than thirty years Senigaur has been employed by BISD, he has consistently received good to excellent performance evaluations, which are rated numerically one through five. In 1986–87, and 1989–90, Senigaur received a rating of 3, or "needs improvement" on one segment of his evaluation, staff relations. The 1986–87 term was the year Senigaur experienced massive difficulty in dealing with parents and faculty at Marshall. The 1989–90 term was the year Senigaur had difficulty with faculty at Little Brook.

These are the only 3's Senigaur has ever received. Since 1986–87, Senigaur has been evaluated by Mallett, who was promoted over Senigaur in one of the disputed promotions.

## CONCLUSIONS OF LAW

This court has jurisdiction over this action and these parties. Although many of Taylor's actions regarding the Boardman, Hilgemeier, and Ramey decisions indicate a motive unrelated to making the best business decision, those decisions are not actionable. This court reaches the following conclusions regarding each actionable claim.

This court finds no evidence of conspiracy in any of these claims to support a claim under 42 U.S.C. § 1985, and no basis in any of these claims for the Texas state tort claim of intentional infliction of emotional distress.

2. Coincidentally, this is the same Henry Hilgemeier whose promotion Senigaur challenged in

his second non-actionable claim.

■ Regarding the claim BISD failed to promote Senigaur to the position of Administrative Assistant for Secondary Schools, the parties have agreed that this claim is only actionable under Title VII. No other cause of action will be considered. Senigaur has made his *prima facie* showing that he is black, applied for the position, had the minimum qualifications, was not selected, and a white candidate, Mallett, was selected. *See McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973). BISD has articulated a legitimate non-discriminatory reason for its action; its business decision was Mallett was better-qualified for the position based on his experience. *See Texas Dept. of Community Affairs v. Burdine*, 450 U.S. 248, 101 S.Ct. 1089, 67 L.Ed.2d 207 (1981). Mallett had previously presided over the merger of two high schools, and the new Administrative Assistant would have to preside over another merger of two high schools. This court cannot use civil rights statutes like Title VII as a means of second-guessing a business decision. *Thornbrough v. Columbus & Greenville R.R. Co.*, 760 F.2d 633 (5th Cir.1985). BISD's proffered reason is a legitimate business decision, based on considerations which are not racially discriminatory.

Senigaur has failed to prove BISD's articulated reason is pretextual. *See McDonnell Douglas*. The burden of persuasion remains on the plaintiff throughout a Title VII lawsuit. *Wards Cove Packing Co., Inc. v. Atonio*, 490 U.S. 642, 109 S.Ct. 2115, 104 L.Ed.2d 733 (1989). Senigaur has failed to carry that burden of persuasion, and this court concludes he was not intentionally discriminated against on the basis of his race when he was not selected as Administrative Assistant of Secondary Schools.

■ This court cannot reach under Title VII Senigaur's second claim, complaining that BISD failed to promote him to the position of Director of Elementary Instruction. For some reason, Senigaur never filed a charge with the EEOC regarding this claim. *See Gupta v. East Texas State University*, 654 F.2d 411 (5th Cir.1981).

This court will consider Senigaur's second claim under the 14th Amendment, and 42 U.S.C. §§ 1981 and 1983. In examining this claim under the 14th Amendment and 42 U.S.C. §§ 1981 and 1983, this court is to apply the principles articulated in Title VII cases. *See Scott v. City of Houston*, 613 F.Supp. 34 (S.D.Tex.1985); *General Building Contractors Association, Inc. v. Pennsylvania*, 458 U.S. 375, 102 S.Ct. 3141, 73 L.Ed.2d 835 (1982).

Applying the principles of *McDonnell Douglas* and *Texas Dept. of Community Affairs*, this court concludes Senigaur made his *prima facie* showing. BISD argued Ann Thacker was better qualified on the basis of her experience. Senigaur has shown to this court's satisfaction that BISD's explanation was pretextual. Thacker was not better qualified for the position. Senigaur was intentionally discriminated against on the basis of his race. Accordingly, Senigaur is awarded compensatory damages of $50,000.00.

■ Senigaur finally claims racial discrimination in BISD's failure to promote him to principal of West Brook High School. Applying the *McDonnell Douglas* analysis to this claim, this court concludes no recovery is available under Title VII, the 14th Amendment, or 42 U.S.C. §§ 1981 and 1983.

■ Turning to the claims of retaliation in reassignment, this court first notes those claims can only proceed under Title VII, the 14th Amendment, and 42 U.S.C. § 1983. No relief is available under 42 U.S.C. § 1981. *See Patterson v. McLean Credit Union*, 491 U.S. 164, 109 S.Ct. 2363, 105 L.Ed.2d 132 (1989).

■ In both the reassignment to Bowie and to Little Brook, Senigaur has made his *prima facie* showing. In regard to the Bowie reassignment, BISD has articulated the legitimate reason of giving Senigaur a chance at a school where he did not have difficulties in relating to parents and staff. In regard to the Little Brook reassignment, it is in fact a promotion to an upper grade level school. This court concludes Senigaur has failed to show BISD intentionally

discriminated against him on the basis of his race.

Senigaur fails to carry his burden. *See Jones v. Flagship International*, 793 F.2d 714 (5th Cir.1986). There is no evidence that but for his protected activities, Senigaur would not have been reassigned or would have been promoted. *Jack v. Texaco Research Center*, 743 F.2d 1129 (5th Cir.1984). This court concludes BISD did not retaliate against Senigaur for filing EEOC charges or this lawsuit.

## CONCLUSION

Senigaur is only entitled to relief on his § 1983 claim regarding the position of Director of Elementary Instruction. BISD and the other defendants are entitled to judgment that plaintiff takes nothing on all other claims.

The plaintiff will submit a proposed judgment; each party will bear its own costs.