United States Court of Appeals
Fifth Circuit

**F I L E D**

**August 4, 2004**

Charles R. Fulbruge III
Clerk

In the

# United States Court of Appeals
## for the Fifth Circuit

_____

m 03-51167
Summary Calendar

_____

PERSEVERANDA CLAYTON,

Plaintiff-Appellant,

VERSUS

DONALD H. RUMSFELD,
SECRETARY, DEPARTMENT OF DEFENSE,
ARMY/AIR FORCE EXCHANGE,

Defendant-Appellee.

_____

Appeal from the United States District Court
for the Western District of Texas
m SA-02-CV-231

_____

Before SMITH, DEMOSS, and STEWART, Circuit Judges.

JERRY E. SMITH, Circuit Judge.[*]

The plaintiff, Perseveranda Clayton, is an Asian female who worked as a Safety and Security Supervisor at Randolph Air Force Base from July 1997 to January 2000. She sued her employer, the Army/Air Force Exchange Service, *via* the Secretary of Defense, for employment discrimination and retaliation under title VII. The district court entered summary judgment for the government, and we affirm.

Clayton seeks to show that certain events constituted adverse employment actions necessary for a claim of retaliation. In addition, she asserts that the district court incorrectly determined that her claims of demotion and constructive discharge were not administratively exhausted. In the alternative, she maintains that legal technicalities should not obstruct her claims of demotion and constructive discharge.

In November 1998, Kelley Hughes, who had previously worked at Lackland Air Force Base, was selected over Clayton for a supervisory position at the Army/Air Force Exchange Service. Hughes became Clayton's first line supervisor. Clayton alleges that during this time, she was the subject of disparaging comments and continuous scrutiny over her work performance by Hughes.

Clayton received a letter of warning in Sep-

tember 1999, an unsatisfactory special performance appraisal in December 1999, and a demotion by her second-line supervisor, General Manager Daniel Metsala, from her supervisor position to a retail position at Lackland Air Force Base. Clayton took sick leave and never reported to work there. She was discharged in May 2001 pursuant to regulations that require termination if the employee has not returned to work within one year.

Clayton requested and received an evidentiary hearing before an administrative law judge ("ALJ") on September 20, 2001. The ALJ issued a decision in favor of the government on October 29, 2001, whereupon Clayton sued.

Summary judgment is appropriate where the pleadings, answers to interrogatories, admissions on file, and affidavits show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). The movant bears the initial responsibility of demonstrating the absence of a genuine issue of material fact with respect to those issues on which he bears the burden of proof at trial. *Transamerica Ins. Co. v. Avenell*, 66 F.3d 715, 718 (5th Cir. 1995) (per curiam). Once the burden of showing an absence of a genuine issue of material fact has been met, the nonmoving party must establish the existence of evidence creating an issue of fact that can be properly characterized as outcome determinative. *Hanchey v. Energas Co.*, 925 F.2d 96, 97 (5th Cir. 1990). A summary judgment is reviewed *de novo*. *Scales v. Slater*, 181 F.3d 703, 708 (5th Cir. 1999).

---

[*] Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

## I.

Title VII provides in relevant part that "it shall be an unlawful employment practice for an employer to discriminate against any of his employees . . . because he has made a charge . . . under this subchapter." 42 U.S.C. § 2000e-3(a). A retaliation claim has three elements: (1) The employee engaged in activity protected by title VII; (2) the employer took adverse employment action against the employee; and (3) a causal connection exists between that protected activity and the adverse employment action. *Shirley v. Chrysler First, Inc.*, 970 F.2d 39, 42 (5th Cir. 1992).

A title VII plaintiff may recover only if the challenged employment decision rises to the level of an "adverse employment action or must materially affect the terms and conditions of employment." *Mattern v. Eastman Kodak Co.*, 104 F.3d 702 (5th Cir. 1997). This is true for both discrimination and retaliation claims. *Barrow v. New Orleans S.S. Ass'n*, 10 F.3d 292, 298 (5th Cir. 1994). An adverse employment action could include a discharge, demotion, refusal to hire, refusal to promote, reprimand, or acts of sabotage by employees against other employees, either condoned or directed by an employer for the purpose of establishing cause for discharge. *Mattern*, 104 F.3d at 707. Alternatively, merely placing a memorandum regarding an employee's performance in his personnel file does not in itself constitute an adverse employment action. *Id.* Also, lowered performance ratings are not adverse employment decisions. *Douglas v. DynMcDermott Petroleum Operations Co.*, 144 F.3d 364, 373 (5th Cir. 1998).

Title VII was designed to address ultimate employment decisions, not every decision by employers that arguably might have some tangential effect on those ultimate decisions.

*Dollis v. Rubin*, 77 F.3d 777, 781-82 (5th Cir. 1995). Specifically, ultimate employment decisions include acts such as hiring, granting leave, discharging, promoting, and compensating. *Id.* at 782. Interlocutory or intermediate decisions that can lead to an ultimate decision are insufficient to support a *prima facie* case of retaliation. *Mattern*, 104 F.3d at 708. Consequently, the "ultimate employment decision" doctrine requires that actionable adverse employment actions "have more than a mere tangential effect on a possible future ultimate employment decision." *Mota v. Univ. of Tex. Houston Health Sci. Ctr.*, 261 F.3d 512, 519 (5th Cir. 2001) (quoting *Walker v. Thompson*, 214 F.3d 615, 629 (5th Cir. 2000)).

We use a balancing test to determine whether title VII's protections may be denied to an employee regarding actions that adversely affect his performance. *Jones v. Flagship Int'l*, 793 F.2d 714, 727 (5th Cir.1986). The employer's right to run its business must be balanced against the right of the employee to express his grievances and promote his own welfare. *Id.* The employee's conduct must be measured as reasonable in light of the circumstances. *Id.*

"[A] retaliation claim cannot be based solely on an employer's act of 'limiting' an employee 'in any way that would deprive [that employee] of employment opportunities . . . .'" *Burger v. Cent. Apartment Mgmt., Inc.*, 168 F.3d 875, 878-79 (5th Cir. 1999) (quoting 42 U.S.C. § 2000e-2(a)(2) (brackets in original)). Therefore, unlawful employment practices include only ultimate employment decisions and not vague harms." *Id.* at 879.

The actions described by Clayton are too tangential to be ultimate employment decisions. Although those acts may be seen as

limiting her, they are not ultimate employment actions. Specifically, the actions she maintains are adverse employment actions include possible spying, a non-promotable rating, scrutinization, a letter of warning, rejection of Clayton's request to have a third person of her choosing present at weekly meetings with her supervisors, an eventual demotion and transfer to Lackland Air Force Base, and exclusion and unfair treatment.

The district court correctly determined that, with the exception of the demotion with transfer, the actions described are not adverse employment actions. Analogous to the events in *Mattern*, 104 F.3d at 708, the events Clayton complains of are similar to disciplinary filings and supervisor reprimands. Accordingly, the district court properly found that, with the exception of her demotion and possible constructive discharge, the acts Clayton relies on are impertinent, and summary judgment was properly granted.

## II.

Courts have no jurisdiction to consider title VII claims as to which the aggrieved party has not exhausted administrative remedies. *Nat'l Ass'n of Gov't Employees v. City Pub. Serv. Bd.,* 40 F.3d 698, 711 (5th Cir. 1994) (citing *Tolbert v. United States*, 916 F.2d 245, 247-48 (5th Cir. 1990) (per curiam)). The primary purpose of the administrative exhaustion requirement is to allow the agency, in its investigatory and conciliatory role, fully to investigate and attempt to resolve claims of discrimination. *Nicol v. Imagematrix, Inc.*, 767 F. Supp. 744, 752 (E.D. Va. 1991). A title VII suit, however, "may extend as far as, but not further than, the scope of the EEOC investigation which could reasonably grow out of the administrative charge." *Fine v. GAP Chem. Corp.*, 995 F.2d 576, 578 (5th Cir. 1993).

Furthermore, a title VII cause of action may be based not only on the specific complaints made in the initial EEOC charge, but also on any kind of discrimination like or related to the charge's allegations, limited only by the scope of the EEOC investigation that could reasonably be expected to grow out of the initial charge of discrimination. *Id.*

The crucial element of a charge of discrimination is the factual statement contained therein. *Sanchez v. Standard Brands, Inc.*, 431 F.2d 455, 462 (5th Cir. 1970). Next, the administrative charge must be viewed in its broadest reasonable sense in order effectively to attempt to eliminate, by the administrative process, possible discriminatory practices and policies. *Id.* at 467. One of the central purposes of the charge is to put the employer on notice of the existence and nature of the charges. *Manning v. Chevron Chem. Co.*, 332 F.3d 874, 878-89 (5th Cir. 2003).

To notify employers adequately about the nature of the charges against them, employees must inform their employers from the outset about their claims of discrimination. *Id.* Alternatively, allowing a complaint to encompass allegations outside the ambit of the predicate EEOC charge would circumvent the EEOC's investigatory and conciliatory role, as well as deprive the charged party of notice of the charges. *Babrocky v. Jewel Food Co.*, 773 F.2d 857, 863 (7th Cir. 1985).

The district court found that the administrative record of Clayton's EEOC charge indicates that she did not raise the issue of her constructive discharge in the administrative process. Clayton suggests that she relied on constructive discharge in her response to the motion for summary judgment. Because, however, she did not raise the issue in the ad-

ministrative process, she did not exhaust her remedies.

Consequently, the government was not put on notice of the constructive discharge claim. In addition, Clayton did not object to the framing of the issue by the EEOC and the ALJ, which issue did not include her demotion claim. Thus, Clayton's demotion claim was abandoned, and the employer was not given the opportunity effectively to try to eliminate possible discriminatory practices and policies. Accordingly, the district court correctly entered summary judgment.

III.

Mindful of the remedial and humanitarian underpinnings of title VII and of the crucial role played by the private litigant in the statutory scheme, courts construing title VII have been reluctant to allow procedural technicalities to bar claims brought under the Act. *Sanchez*, 431 F.2d at 461-62. Title VII is designed to protect the many who are unlettered and unschooled in the nuances of literary draftsmanship. *Id.* at 465. Verbal precision and finesse are not required from those whom the statute is meant to protect. *Id.* Furthermore, to compel the charging party specifically to articulate, in his charge, the full array of discrimination he may have suffered may cause the very persons title VII was designed to protect to lose that benefit because they are ignorant of, or unable thoroughly to describe, the discriminatory practices to which they have been subjected. *Fellows*, 701 F.2d at 451.

Clayton points out that she is not an attorney, nor does she have any legal background, training, or education. She was not represented by counsel at the September 20, 2001, EEO hearing. She asserts that it is inconceivable that her right to assert a claim of disciplinary demotion should be cut off because she failed to object to the ALJ's framing of the issues during the hearing. Clayton mistakenly asserts, however, that her failure to notify her employer of charges is a procedural technicality, for, if she is allowed to circumvent the administrative processes, the EEOC will not be able to serve in its investigatory and conciliatory role.

Clayton's case is distinguishable from *Sanchez*, on which she relies. There, we held that failure to check the appropriate box indicating the reason for the claim of discrimination on the EEOC charge form, and failure to use the exact words in harmony with earlier charges, were technical niceties that would not prevent a plaintiff from bringing a civil action. *Sanchez*, 431 F.2d at 464. By way of contrast, Clayton's claims of demotion and constructive discharge did not reflect the essence of the other charges.

This is not a case in which procedural technicalities are preventing an employee from properly bringing a claim. Rather, because the government was not given notice of Clayton's constructive discharge and demotion claims, the EEOC had no opportunity to investigate. Consequently, the district court correctly granted summary judgment on Clayton's demotion and constructive discharge claims, because they were not administratively exhausted.

AFFIRMED.