[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 05-12750
Non-Argument Calendar

_____

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
JANUARY 9, 2006
THOMAS K. KAHN
CLERK

D. C. Docket No. 04-21094-CV-PCH

ANTONIO M. APODACA,

Plaintiff-Appellant,

versus

SECRETARY OF THE DEPARTMENT OF HOMELAND SECURITY,
The Honorable Michael Chertoff,

Defendant-Appellee.

_____

Appeal from the United States District Court
for the Southern District of Florida

_____

**(January 9, 2005)**

Before DUBINA, CARNES and PRYOR, Circuit Judges.

PER CURIAM:

Appellant Antonio M. Apodaca, a 63-year old man of Mexican descent,

appeals *pro se* the grant of summary judgment to his employer, the Department of Homeland Security ("DHS"), in his employment discrimination, retaliation, and hostile work environment case, brought pursuant to the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. § 621 *et seq.*, and Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq* ("Title VII"). On appeal, Apodaca argues that the district court erred by concluding that he failed to (1) show that he suffered an adverse employment action and thus did not establish *prima facie* cases of discrimination and retaliation based on race, national origin, and age; and (2) establish a *prima facie* case for a hostile work environment. Each issue is discussed in turn.

### *Summary Judgment Standard*

We review *de novo* the district court's grant of a motion for summary judgment, viewing all evidence and factual inferences in the light most favorable to the nonmoving party. *Turnes v. AmSouth Bank, N.A.*, 36 F.3d 1057, 1060 (11th Cir. 1994). Summary judgment is proper if the pleadings, depositions, and affidavits show that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S. Ct. 2548, 2552, 91 L. Ed. 2d 265 (1986) (quoting Fed.R.Civ.P. 56(c)). In order to defeat summary judgment, however, the non-moving party

"must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Electric Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586, 106 S. Ct. 1348, 1356, 89 L. Ed. 2d 538 (1986). The non-moving party must make a sufficient showing on each essential element of the case for which he has the burden of proof. *Celotex*, 477 U.S. at 323, 106 S. Ct. at 2552.

***Prima Facie Cases of Discrimination and Retaliation***

Apodaca argues, in pertinent part, that he suffered the following adverse employment actions: (1) an unsatisfactory annual performance evaluation; (2) two "meets" annual performance evaluations that contained comments that made them unsatisfactory ratings; (3) direction to maintain two offices eight miles apart; (4) the hiring and selection process; and (5) his superiors "seeking dirt." Apodaca argues that his unsatisfactory performance evaluation stigmatized him, resulted in his working overtime hours without compensation, and ruined his promotional opportunities. Apodaca also argues that his supervisor's, Commander ("CDR") Kilmartin's, statement, asking him if he is "too old to learn anything new," constitutes direct evidence of discrimination because it was made in relation to Kilmartin asking Apodaca about the training course that he had directed Apodaca to attend due to Apodaca's unsatisfactory evaluation and performance improvement plan ("PIP").

3

Section 2000e-16 of Title 42 states that "[a]ll personnel actions affecting employees . . . in executive agencies as defined in section 105 of Title 5 . . .shall be made free from any discrimination based on race, color, religion, sex, or national origin." 42 U.S.C. § 2000e-16(a). The ADEA makes it unlawful for an employer "to fail or refuse to hire or to discharge any individual or otherwise discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment because of such individual's age." 29 U.S.C. § 623(a)(1). Under both Title VII and the ADEA, a plaintiff may prove a claim of discrimination through (1) direct evidence, (2) circumstantial evidence, or (3) statistical proof. *See Earley v. Champion Int'l Corp.*, 907 F.2d 1077, 1081 (11th Cir. 1990); *see also Eskra v. Provident Life & Acc. Ins. Co.*,125 F.3d 1406, 1411 (11th Cir. 1997) (holding that when proving discriminatory treatment, the same analysis applies to ADEA cases as to Title VII cases).

We have held that, "direct evidence is 'evidence, which if believed, proves [the] existence of [a] fact in issue without inference or presumption.'" *Akouri v. State of Fla. Dep't of Transp.*, 408 F.3d 1338, 1347 (11th Cir. 2005) (quoting *Burrell v. Bd. of Trs. of Ga. Military Coll.*, 125 F.3d 1390, 1393 (11th Cir. 1997)). "An example of direct evidence would be a management memorandum saying, Fire [Defendant]--he is too old." *Damon v. Fleming Supermarkets of Fla., Inc.*,

196 F.3d 1354, 1358-59 (11th Cir. 1999) (holding that direct evidence "must indicate that the complained-of employment decision was *motivated* by the decision-maker's ageism") (emphasis in original).

When the plaintiff relies upon circumstantial evidence to establish his claim, the district court examines the claim using the burden-shifting framework established in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 93 S. Ct. 1817, 36 L. Ed. 2d 668 (1973); *see also Kelliher v. Veneman*, 313 F.3d 1270, 1275 (11th Cir. 2002) (deciding case brought under both Title VII and ADEA). Within this framework, the plaintiff may establish a *prima facie* case of discrimination based on disparate treatment under both the ADEA and Title VII by showing that he was "(1) a member of the protected class; (2) qualified for the position; (3) subjected to adverse employment action; and (4) replaced by a person outside the protected class or suffered from disparate treatment because of membership in the protected class." *Kelliher*, 313 F.3d at 1275.

Title VII prohibits retaliation in the employment arena:

It shall be an unlawful employment practice for an employer to discriminate against any of his employees . . . because he has opposed any practice made an unlawful employment practice by this subchapter, or because he has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this subchapter.

42 U.S.C. § 2000e-3(a). To establish a *prima facie* case of retaliation under Title

5

VII and the ADEA, a plaintiff must show that "(1) []he engaged in statutorily protected expression; (2) []he suffered an adverse employment action; and (3) the adverse action was causally related to the protected expression." *Weeks v. Harden Mfg. Corp.*, 291 F.3d 1307, 1311 (11th Cir. 2002); *see also Gupta v. Florida Bd. of Regents*, 212 F.3d 571, 587 (11th Cir. 2000). "To establish a causal connection, a plaintiff must show that the decision-makers were aware of the protected conduct [and] that the protected activity and the adverse employment action were not wholly unrelated." *Gupta*, 212 F.3d at 590 (internal quotations and citation omitted).

We have held that "not all conduct by an employer negatively affecting an employee constitutes an adverse employment action." *Davis v. Town of Lake Park, Fla.*, 245 F.3d 1232, 1238 (11th Cir. 2001). We held further that:

> the employer's action must impact the 'terms, conditions, or privileges' of the plaintiff's job in a real and demonstrable way. Although the statute does not require proof of direct economic consequences in all cases, the asserted impact cannot be speculative and must at least have a tangible adverse effect on the plaintiff's employment. We therefore hold that, to prove adverse employment action in a case under Title VII's anti-discrimination clause, an employee must show a *serious and material* change in the terms, conditions, or privileges of employment. Moreover, the employee's subjective view of the significance and adversity of the employer's action is not controlling; the employment action must be materially adverse as viewed by a reasonable person in the circumstances.

*Id.* at 1239 (emphasis in original). In determining whether an adverse employment

6

action occurred, the cumulative effect of several individual actions may be considered. *Bass v. Bd. of County Comm'rs, Orange County, Fla.*, 256 F.3d 1095, 1118 (11th Cir. 2001). Whether an employee has suffered a materially adverse employment action depends on the facts of each individual case. *Id.* "[A]n action which, it turns out, had no effect on an employee is not an 'adverse' action." *See Stavropoulos v. Firestone*, 361 F.3d 610, 617 (11th Cir. 2004), *cert. denied*, 125 S. Ct. 1850 (2005) (citations omitted).

After reviewing the record, we conclude that Apodaca fails to show that he suffered an adverse employment action because the undisputed evidence, including his testimony, established that none of his allegations materially altered the terms or conditions of his employment. Apodaca's direct evidence of discrimination, Kilmartin's statement asking him if he was too old to learn anything new, is not related to any employment decision that affected the conditions of Apodaca's employment. Moreover, any circumstantial evidence presented by Apodaca fails to show that either his performance evaluations, the request to maintain a second office, or the new hiring policies and decision negatively affected his employment conditions or privileges in a demonstrable way. Thus, because Apodaca is unable to show that his employer's actions impacted the terms, conditions, or privileges of

7

his job in a real and demonstrable way, he fails to establish a *prima facie* case of discrimination and retaliation under either Title VII or the ADEA.

### *Prima Facie Case for a Hostile Work Environment*

Apodaca argues that when considered "in toto," his allegations establish that he was harassed because he was the only Hispanic/Mexican American division chief over age 60. Apodaca argues that the harassment was severe and pervasive because he: (1) was treated less favorably than his Caucasian comparators; (2) was vetoed when he made hiring selections and his authority to make selections was eliminated; (3) was accused of not serving customers, even though no such requirement existed; (4) had to contend with Kilmartin "seeking dirt" on his division; (5) was accused of lying by Kilmartin; (6) was denied a performance award for one of his employees; (7) was accused of not following the hiring procedures; (8) received tainted performance evaluations; and (9) was accused of not being a "team player" and labeled a "disgruntled employee."

To establish a hostile work environment claim, a plaintiff must show: "(1) that he belongs to a protected group; (2) that he has been subject to unwelcome harassment; (3) that the harassment must have been based on a protected characteristic of the employee, such as national origin; (4) that the harassment was sufficiently severe or pervasive to alter the terms and conditions of employment

8

and create a discriminatorily abusive working environment; and (5) that the employer is responsible for such environment under either a theory of vicarious or of direct liability." *Miller v. Kenworth of Dothan, Inc.*, 277 F.3d 1269, 1275 (11th Cir. 2002). "A hostile work environment claim under Title VII is established upon proof that the workplace is permeated with discriminatory intimidation, ridicule, and insult, that is sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment." *Id.* (internal quotations omitted). "In evaluating the objective severity of the harassment, we consider, among other factors: (1) the frequency of the conduct; (2) the severity of the conduct; (3) whether the conduct is physically threatening or humiliating, or a mere offensive utterance; and (4) whether the conduct unreasonably interferes with the employee's job performance." *Id.* at 1276. Moreover, "simple teasing, offhand comments, and isolated incidents (unless extremely serious) will not amount to discriminatory changes in the terms and conditions of employment." *Faragher v. City of Boca Raton*, 524 U.S. 775, 788, 118 S. Ct. 2275, 2283, 141 L. Ed. 2d 662 (1998) (citation omitted).

We conclude from the record that Apodaca fails to establish a *prima facie* case for a pervasive hostile work environment because he provides no evidence

9

that any of his allegations were based on race or national origin. Also, the only allegations that possibly relate to Apodaca being a member of a protected class or participating in a protected activity are (1) Kilmartin's asking Apodaca if Apodaca was "too old to learn anything new;" and (2) Kilmartin asking Apodaca to stop lying about him, as such related to Apodaca's filing of his EEOC complaint, only occurred once and thus were not severe or pervasive. Moreover, Apodaca's supervisors' other actions arose from policies that applied office-wide and thus did not create a discriminatorily abusive work environment.

Because there is no genuine issue of material fact as to whether Apodaca suffered from either discrimination and retaliation based on race, national origin, and age, or from a hostile work environment, we affirm the district court's grant of summary judgment.

**AFFIRMED.**