Tametra Y. MOORE, Plaintiff,

v.

CRICKET COMMUNICATIONS, INC., Defendant.

Civil Action No. H–09–3310.

United States District Court, S.D. Texas, Houston Division.

Feb. 15, 2011.

Dwight E. Jefferson, Attorney at Law, Houston, TX, for Plaintiff.

David J. Comeaux, Ogletree Deakins et al., Houston, TX, for Defendant.

### MEMORANDUM AND ORDER

KEITH P. ELLISON, District Judge.

Pending before the Court are the Motion for Summary Judgment (Doc. No. 14) filed by Defendant Cricket Communications, Inc. ("Cricket"). After considering the parties' filings and the applicable law,

the Court finds that the Motion for Summary Judgment should be denied.[1]

## I. BACKGROUND

Plaintiff Tametra Y. Moore is an African–American woman employed by Cricket. After working at a Cricket store in Nashville, Tennessee, Plaintiff transferred to Cricket's newly-opening store in Pearland, Texas to work as a retail sales representative. Plaintiff alleges that her manager at the Pearland store, Travis Mikkola, a white male, sexually harassed and racially discriminated against her, and that Mikkola and other Cricket employees retaliated against Plaintiff after she complained of Mikkola's conduct.

Plaintiff began working at the Pearland store in June 2008. (Doc. No. 25–2, Tametra Moore Dep., Apr. 16, 2010, at 21.) Her co-worker Dwan Long (also an African–American female), testified that "initially all of us were pretty much friends." (Doc. No. 25–3, Dwan Long Dep., Sept. 14, 2010, at 22.) Plaintiff testified that, beginning in late August 2008, Mikkola began making sexually explicit statements to her. (Moore Dep. at 155–56.) For example, Plaintiff testified that Mikkola commented about his sexual prowess and the size of his penis. (Id. at 155–58.) She testified that Mikkola asked her if she had "ever been with a white man," to which Plaintiff responded that she had not. Plaintiff testified that Mikkola said, "It's a myth that white man's have little dicks, because my dick is huge. My wife can testify to that." (Id. at 158.) She testified that Long responded by saying "Don't nobody want no pink white dick," to which Mikkola responded, "Well, forget you, Dwan. You have to try. You can't knock it until you try it." (Id.) Plaintiff also testified that

Mikkola said that "[h]e likes to eat from the ass to the pussy." (Id. at 156–58.)

Plaintiff alleges that Mikkola made several statements about black women in particular. She testified that, on one occasion, when a young black woman walked into the store, Mikkola said to Plaintiff, "The blacker the berry, the sweeter the juice," and "Black women got better pussy than—than white women." (Moore Dep. at 248.) She testified that Mikkola said that he wanted to "sleep with" virtually every black woman who came into the store, and that it was only black and Hispanic women about whom he would make sexual comments, not white women. (Id. at 229, 249.)

Finally, Plaintiff and Long both testified that, on one occasion, Mikkola showed Plaintiff and Long a photo of Mikkola's penis. Plaintiff testified that Mikkola "had some pictures pulled up. He clicked on one, I guess, to make it bigger; and it was him and his penis." (Id. at 169.) She testified that she and Long saw the photo for "[a] few seconds maybe. You know, turned around, and then looked; and then, we were both, like, 'Oh,' you know, 'you're nasty.'" (Id.) Finally, Plaintiff testified that Mikkola's face was identifiable in the photo, as it was taken in front of a bathroom mirror. (Id.)

Long testified that Mikkola accessed the photo through an email address he had created to send documents to his wife while he was serving in the military, and that he said he had previously sent the photo to his wife. (Long Dep. at 21–23, 57.) Long testified that Mikkola "pulled up a picture.... And he kind of turned it around so we could see it and then he—he turned it back." (Id. at 23.) Long testi-

---

1. Because summary judgment is inappropriate whether or not the Court considers the declaration from Clarence Robbins, the Court need not rule at this time on the admissibility of Robbins's testimony. See Doc. No. 32, Motion to Strike Summary Judgment Evidence.

fied that it "shocked" her and that she "[could]n't believe Travis showed us a picture of himself nude like that." (*Id.* at 23–24.) Long testified that she did not recall seeing Mikkola's face in the photo, but that she knew it was a picture of Mikkola "[b]ecause he said it was." (*Id.* at 56–57.)

Plaintiff testified that, because of Mikkola's conduct, her job became "horrible, and [she] cried and didn't want to go to work...." (Moore Dep. at 65.) She testified that she considered Mikkola's comments "vulgar" in the context they were spoken. (*Id.* at 157.) Long testified that Plaintiff said that it "bothered [Plaintiff] that [the photo incident] happened" and that right after he showed the photo Plaintiff said to Long, "why would he do that?" and "what would make you do that?" (*Id.* at 68.)[2]

Plaintiff testified that, in late August 2008, she verbally informed Joseph Winkfield—Mikkola's immediate supervisor—that Mikkola "talks about all kind of sexual stuff all the time." (*Id.* at 76.) She testified that she told Mikkola about her concern with sexual comments he had made. (*Id.* at 227.) Plaintiff first made a written complaint about Mikkola's conduct to Cricket's Human Resources department on September 9, 2008. (Doc. No. 14–6.) Evidence also shows that Plaintiff and Long met with Winkfield on October 3, 2008 to discuss complaints about Mikkola's conduct. (Doc. No. 25–7, Email from Joseph Winkfield to Dawn Martin, Phyllis Matysik, and Rafael Gomez, Oct. 13, 2008.) Winkfield did not forward their complaint to the Human Resources department until ten days after that meeting. (*Id.*)

Plaintiff contends that she was retaliated against as a result of complaining about Mikkola's conduct. Despite Cricket's policy that information transmitted to Human Resources about harassment be kept confidential, Doc. No. 25–11, ¶ G, Plaintiff testified that both Mikkola and someone in the corporate office knew about her complaint even though she did not tell them about it. (Moore Dep. at 281–82.) Plaintiff testified that Mikkola threatened to start an investigation against her, *id.* at 105–06, and Jennifer Lehnen, a Cricket customer operations manager, testified that Mikkola contacted her in October 2008 and asked her to investigate Plaintiff for allegations that four of her customers were not on the correct rate plan. (Ex. L to Doc. No. 25, Jennifer Lehnen Dep., Oct. 5, 2010, at 7–9.) Lehnen further testified that she did not recall Mikkola ever previously contacting her asking for an investigation, and that she was "frustrated" by it because it was not something she could investigate but rather something that Mikkola could research himself. (*Id.* at 10–12.) Plaintiff's and Long's testimony suggests that Mikkola instructed Long to stop bringing her personal laptop to work but not to tell Plaintiff about the company policy against personal laptops, and to document if Plaintiff brought her laptop to work, in order to get Plaintiff fired for violating that policy. (*Id.* at 113; Long Dep. at 34.)

Plaintiff also testified that Mikkola retaliated against her by "turn[ing] everybody against [her] in the store," and that this resulted in other employees ceasing speaking to her unless it was necessary and ignoring her instructions, despite her position as a lead sales representative. (Moore Dep. at 92–94, 103–04.) She also testified that other employees refused to do their share of daily tasks at the store, leaving them for Plaintiff, and that Mikkola left extra tasks for her to do at work, such as counting the money in the store

---

2. Plaintiff acknowledges, however, that Mikkola never "physically tried to kiss [her] or grab [her] private parts or anything like that," and never "asked [her] out on a date." (*Id.* at 158–59.)

safe, and that he interfered with her work by being rude to Plaintiff's customers. (*Id.* at 103–06.) Plaintiff testified that she asked Winkfield to transfer her to a different Cricket store, but that Winkfield refused and suggested that Plaintiff wait until Mikkola went on military leave the following month. (*Id.* at 65–67.) Plaintiff applied for a job as an indirect sales specialist with Cricket working away from the Pearland store, and began in that position on October 20, 2008. (*Id.* at 85.)

On June 2, 2009, Plaintiff's "motor vehicle record (MVR) was checked in accordance with company policy," and she was assessed three "points"[3] for a "Moving Violation" on April 18, 2007 for "Failure to show proof of financial responsibility." (Doc. No. 14–3.) Plaintiff contends that this was done in retaliation for her complaints, and that Human Resources Manager Phyllis Matysik could not explain why the vehicle check had not been done previously. (Moore Dep. at 114–16.) Plaintiff testified that, after she had begun her job as an indirect sales specialist, a store manager at Pearland—"Travis Mikkola's best friend"—falsely told Plaintiff's boss Khalid Adhi that Plaintiff had gone into her old store "bragging and boasting that [indirect sales specialists] don't do any work." (*Id.* at 116–18.) Finally, she testified that she had been investigated and told by her supervisor "not to go into the League City store" because another employee had reported that Plaintiff had "inappropriate conversations and talking about [her] weekend job as stripper," even though she has never worked as a stripper. (*Id.* at 136–37.)

Plaintiff brought this suit alleging sex discrimination, race discrimination, and retaliation for engaging in protected activity, in violation of Title VII of the Civil Rights Act of 1964. 42 U.S.C. § 2000e, *et seq.*

## II. LEGAL STANDARD FOR SUMMARY JUDGMENT

A motion for summary judgment requires the Court to determine whether the moving party is entitled to judgment as a matter of law based on the evidence thus far presented. Fed.R.Civ.P. 56(c). Summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." *Kee v. City of Rowlett*, 247 F.3d 206, 210 (5th Cir.2001) (quotations omitted). A genuine issue of material fact exists if a reasonable jury could enter a verdict for the non-moving party. *Crawford v. Formosa Plastics Corp.*, 234 F.3d 899, 902 (5th Cir.2000). The Court views all evidence in the light most favorable to the non-moving party and draws all reasonable inferences in that party's favor. *Id.* Hearsay, conclusory allegations, unsubstantiated assertions, and unsupported speculation are not competent summary judgment evidence. Fed.R.Civ.P. 56(e)(1); *see, e.g., Eason v. Thaler*, 73 F.3d 1322, 1325 (5th Cir.1996); *McIntosh v. Partridge*, 540 F.3d 315, 322 (5th Cir.2008); *see also Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (noting that a non-movant's burden is "not satisfied with 'some metaphysical doubt as to the material facts'") (citing *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986)).

## III. HOSTILE WORK ENVIRONMENT

### A. LEGAL STANDARD

Title VII makes it unlawful for an employer "to fail or refuse to hire or to

---

3. Defendant represents that, under Cricket policy, discipline is warranted if an employee receives nine points on her record. (Doc. No. 14, at 18–19.)

discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin." 42 U.S.C. § 2000e–2(a)(1). Plaintiff alleges violation of that provision on basis that she was subjected to a "hostile or abusive work environment." To prevail with such a claim, a plaintiff must prove that:

> 1) she belongs to a protected class; 2) she was subjected to unwelcome sexual harassment; 3) the harassment was based on sex; 4) the harassment affected a term, condition or privilege of employment; and 5) the employer knew or should have known of the harassment and failed to take remedial action.

*Septimus v. Univ. of Houston,* 399 F.3d 601, 611 (5th Cir.2005). In this case, Defendant only disputes Plaintiff's claim with regard to the fourth prong, arguing that Plaintiff has not proven that "the harassment affected a term, condition or privilege of employment."

■ "[W]hether an environment is 'hostile' or 'abusive' can be determined only by looking at all the circumstances. These may include the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance." *Harris v. Forklift Systems, Inc.,* 510 U.S. 17, 23, 114 S.Ct. 367, 126 L.Ed.2d 295 (1993). To qualify as "hostile or abusive," a work environment must be one that "a reasonable person would find hostile or abusive" and that the victim "subjectively perceive[s] ... to be abusive." *Id.* at 21, 114 S.Ct. 367. As the Fifth Circuit has described it, "A hostile environment claim embodies series of criteria that express

extremely insensitive conduct against women, conduct so egregious as to alter the conditions of employment and destroy their equal opportunity in the workplace." *DeAngelis v. El Paso Mun. Police Officers Ass'n,* 51 F.3d 591, 593 (5th Cir.1995).

## B. ANALYSIS

■ The Court finds that Plaintiff has presented sufficient evidence of Mikkola's insensitive conduct to, at a minimum, raise genuine issues of material fact on the discrimination claims. Plaintiff has met her burden to show both that a reasonable person would find Mikkola's conduct to be hostile or abusive and that she subjectively found it to be hostile or abusive. Mikkola's statements occurred on at least a few occasions. His comments offered explicit details about his body and his sexual habits and desires. They expressed stereotypes about black women and sexualized that group in a way that was objectively hostile and abusive to a black female subordinate employee. Perhaps most importantly, Mikkola's display of the nude photograph of himself to Plaintiff and Long was hostile, abusive, and indeed outrageous conduct. Furthermore, testimony from Plaintiff and Long indicate that Plaintiff subjectively found Mikkola's statements and his display of the photo to be abusive. Applying the totality of the circumstances inquiry described in *Harris,* 510 U.S. at 23, 114 S.Ct. 367, the Court easily finds that Mikkola engaged in "extremely insensitive conduct against women, conduct so egregious as to alter the conditions of employment and destroy their equal opportunity in the workplace." *DeAngelis,* 51 F.3d at 593.

■ Defendant's argument that Mikkola's conduct did not create a "severe or pervasive" hostile work environment flies in the face of the evidence [4] and is unsup-

---

**4.** Defendant denies that Mikkola engaged in the conduct alleged by Plaintiff, but based on

the evidence Plaintiff presents, there are, at a

ported by case law. Defendant cites several cases for the proposition that "sexually suggestive comments do not necessarily establish ... a hostile work environment," and then describes Mikkola's comments as "merely crude and boorish." (Doc. No. 14, at 11.) While it is true that isolated sexually suggestive comments do not *necessarily* create a hostile work environment, the Court must examine the totality of circumstances, including the frequency and severity of those comments. *Harris,* 510 U.S. at 23, 114 S.Ct. 367. Given both the explicit nature and the racial element of Mikkola's comments, they are more severe than those in the cases cited by Defendant. *See, e.g., Indest v. Freeman Decorating,* 164 F.3d 258, 264 (5th Cir.1999) (noting that supervisor's "vulgar remarks and innuendos (about his own anatomy) were no more offensive than sexual jokes regularly told on major network television programs").[5] Furthermore, none of the cases cited by Defendant in which displays of nude images were not found to create a hostile environment involved nude images of the *supervisor himself.* (Doc. No. 14, at 11 (citing, *inter alia, Brennan v. Metropolitan Opera Ass'n, Inc.,* 192 F.3d 310, 319 (2d Cir.1999))). When a supervisor displays nude photos of himself rather than of others, the level of hostility and abuse created is different both in degree and in kind. In sum, Defendant cites no case in which remotely similar statements and actions were found not to create a hostile work environment. The Court finds that Mikkola's conduct was severe and created a hostile and abusive work environment. Summary judgment on this claim is inappropriate.

## IV. ADMINISTRATIVE EXHAUSTION OF RACIAL DISCRIMINATION CLAIM

### A. LEGAL STANDARD

Defendant next moves for summary judgment on Plaintiff's claim of racial discrimination on the grounds that Plaintiff did not administratively exhaust that claim. "The filing of an administrative complaint is a prerequisite to a Title VII suit." *Thomas v. Atmos Energy Corp.,* 223 Fed.Appx. 369, 376 (5th Cir.2007) (per curiam). "The exhaustion requirement has two primary purposes." *Jackson v. Kroger Co.,* 2009 WL 565514, at *3, 2009 U.S. Dist. LEXIS 19048, at *8 (S.D.Tex. March 5, 2009). "First, to allow the EEOC, 'in its investigatory and conciliatory role, fully to investigate and attempt to resolve claims of discrimination.'" *Id.* (citing *Clayton v. Rumsfeld,* 106 Fed. Appx. 268, 271 (5th Cir.2004) (per curiam)). "Second, the requirement 'put[s] employers on notice of the 'existence and nature of the charges against them.'" *Id.* (citing *Manning v. Chevron Chem. Co.,* 332 F.3d 874, 879 (5th Cir.2003)).

A plaintiff is not limited to the facts or types of discrimination expressly stated in an administrative complaint to the EEOC. *Sanchez v. Standard Brands, Inc.,* 431 F.2d 455, 462 (5th Cir.1970) (failure to check a certain box in an EEOC complaint is merely a "technical defect or omission"). "A Title VII cause of action may be based, not only upon the specific complaints made by the employee's initial EEOC charge, but also upon any kind of discrimination like or related to the charge's allegations, limited only by the scope of the EEOC investigation that could reasonably be ex-

minimum, factual questions as to whether the conduct occurred.

5. The *Indest* court declined to decide whether the plaintiff was subjected to a sexually hostile working environment, instead deciding the case on other grounds. *Id.* at 264.

pected to grow out of the initial charges of discrimination." *Fine v. GAF Chemical Corp.*, 995 F.2d 576, 578 (5th Cir.1993). The Fifth Circuit in *Sanchez* reasoned that the complaint must be construed liberally because "the provisions of Title VII were not designed for the sophisticated or the cognoscenti, but to protect equality of opportunity among all employees and prospective employees." 431 F.2d at 463.

## B. ANALYSIS

In her EEOC Intake Questionnaire [6], Plaintiff checked boxes indicating that the bases for her claim of employment discrimination were "Sex" and "Retaliation," but did not check the boxes for "Race" or "Color." Plaintiff did, however, attach to the questionnaire a fourteen-page description of the facts underlying her claim. That statement contains numerous references to race and to Mikkola's comments about black women. (Doc. No. 25–1.)

The statement alleges that, in the first incident of improper behavior, Mikkola talked to Plaintiff and Long about "how he like[d] the darker black women and how 'the darker the berry the sweeter the juice'.... He said that's why his wife is dark skin he likes em sweet sweet etc." (*Id.*, at 7.) It alleges that, later that week, in the presence of Plaintiff and Long:

> [Mikkola] was telling Dwan Long "You can believe in those myths that white boys have small shit" He said that "every black women he has been with has said hes got a big thang" This kind of talk was a regular with him. And how all the black women he has dated Never been with a white boy til they tried him out. He was so good in bed they kept

coming for more. Than he went on to say "Tia" have you ever been with a white man before. I replied "No I haven't been with a white man "The Dwan Long said Yuke I wouldn't try that's sounds nasty I love black men. Travis Mikkola said, "Ya'll don't knock it till yall try it and laughed.

(*Id.* at 7–8.) The statement alleges that in the presence of Plaintiff later that week, after Long suggested that Mikkola had "picked the blackest woman [he] could find to marry," Mikkola again said, "The darker the berry the sweeter the juice ain't that right Tia." (*Id.* at 8–9.) The statement also alleges that, in response to Plaintiff's complaints about Mikkola's conduct, a Cricket employee named Phyllis M. said "that he has a thing or something for black women obivusly," and Mikkola's direct supervisor, Joseph Winkfield, told Plaintiff, "If you were white females he would not have done it." (*Id.* at 12, 18.)

█ The Court finds, based on the allegations in the statement accompanying her EEOC intake questionnaire, that Plaintiff adequately alleged racial discrimination at the administrative level. The allegations explicitly mention race, and suggest that Mikkola repeatedly made prejudiced, derogatory, and demeaning statements about black women on the basis of their race. Indeed, the allegations in the statement are substantially similar to the grounds on which Plaintiff currently alleges violations of Title VII. Thus, a claim of discrimination based on race "could reasonably be expected to grow out of the initial charges of discrimination." *Fine*, 995 F.2d at 578. To hold otherwise would needlessly punish a complainant unrepresented by counsel

---

**6.** Although Plaintiff did not file an EEOC charge, the Intake Questionnaire has been held sufficient to constitute an exhaustion of administrative remedies. *Bryant v. FMC Technologies*, 2010 WL 3701576, at *6 (S.D.Tex. Sept. 16, 2010) (citing *Federal Ex-* *press Corp. v. Holowecki*, 552 U.S. 389, 405, 128 S.Ct. 1147, 170 L.Ed.2d 10 (2008)). Moreover, Defendant does not challenge the adequacy of the Intake Questionnaire in this regard.

for a technical mistake. *See Fellows v. Universal Restaurants, Inc.,* 701 F.2d 447, 451 (5th Cir.1983) ("liberal construction [is] accorded EEOC charges, especially those by unlawyered complainants"). Plaintiff's statement fully enabled the EEOC to investigate her claims and fully put Cricket on notice of those claims, thus fulfilling both purposes of the administrative exhaustion requirement. *See Jackson,* 2009 WL 565514, at *4, 2009 U.S. Dist. LEXIS 19048, at *8. Thus, Plaintiff administratively exhausted her claim for racial discrimination, and summary judgment on the claim is inappropriate.

## V. RETALIATION

### A. LEGAL STANDARD

■ Title VII makes it an unlawful employment practice for an employer:

> to discriminate against any of his employees ... because he has opposed any practice made an unlawful employment practice by this subchapter, or because he has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this subchapter.

42 U.S.C. § 2000e–3(a). To establish a *prima facie* case of retaliation under Title VII, a plaintiff must show "(1) that she engaged in activity protected by Title VII, (2) that an adverse employment action occurred, and (3) that a causal link existed between the protected activity and the adverse action." *Gee v. Principi,* 289 F.3d 342, 345 (5th Cir.2002) (citation omitted). Defendant argues that Plaintiff has failed to prove the second and third prongs.

With regard to the second prong, "a plaintiff must show that a reasonable employee would have found the challenged action materially adverse," meaning "it well might have dissuaded a reasonable worker from making or supporting a charge of discrimination." *Burlington Northern and Santa Fe Ry. Co. v. White,* 548 U.S. 53, 68, 126 S.Ct. 2405, 165 L.Ed.2d 345 (2006). The Court in *Burlington Northern* distinguished "materially adverse" actions from "trivial harms," "petty slights," and "minor annoyances." *Id.* at 68, 126 S.Ct. 2405. The Court also noted that "[c]ontext matters," and "the significance of any given act of retaliation will often depend upon the particular circumstances." *Id.* at 69, 126 S.Ct. 2405; *see also id.* ("an act that would be immaterial in some situations is material in others") (citation omitted).

With regard to the third prong, "a 'causal link' is established when the evidence demonstrates that the [adverse action] was based in part on knowledge of the employee's protected activity." *Medina v. Ramsey Steel Co., Inc.,* 238 F.3d 674, 684 (5th Cir.2001) (citation omitted). "Although the plaintiff's burden at the prima facie stage is not onerous, the plaintiff must produce at least some evidence that the decisionmakers had knowledge of [her] protected activity." *Manning v. Chevron Chemical Co., LLC,* 332 F.3d 874, 883 n. 6 (5th Cir.2003). However, "[t]he plaintiff need not prove that her protected activity was the sole factor motivating the employer's challenged decision" in order to meet this burden. *Gee,* 289 F.3d at 345.

### B. ANALYSIS

Plaintiff presents evidence of a variety of actions taken in response to her complaints about Mikkola's conduct. Among other things, she presents evidence that Mikkola:

— 1) threatened to start an investigation of Plaintiff, and asked Lehnen to investigate her;

— 2) asked Long to avoid informing Plaintiff of Cricket's policy prohibiting personal laptops at work, and specifically asked Long to report to Mikkola any instances of Plaintiff

bringing her laptop, with the aim of getting Plaintiff fired;

— 3) turned other employees against Plaintiff to the extent that they refused to follow her instructions or to do daily tasks, forcing Plaintiff to shoulder the extra work;

— 4) left extra tasks for Plaintiff to do rather than doing them himself, as he would under the normal procedure;

— 5) acted rudely to Plaintiff's customers, making it difficult for her to do her work well.

### 1. Materially Adverse Employment Action

■ The Court finds that a reasonable jury could conclude that Mikkola's actions following Plaintiff's complaint "well might have dissuaded a reasonable worker from making or supporting a charge of discrimination" and so would have been "materially adverse" to a reasonable employee. *Burlington Northern*, 548 U.S. at 68, 126 S.Ct. 2405. Plaintiff's evidence suggests that Mikkola's actions made it difficult to do her job well—both because she was forced to do extra work and because Mik-

kola interfered with her customer relations. The alleged actions also caused Plaintiff to fear for her job security— based on Mikkola's launching of frivolous investigations and attempting to lead Plaintiff to violate company policy and have those violations documented.

Even if some of the challenged actions would not on their own constitute a "materially adverse action," [7] there is at the very least a factual dispute as to whether, viewed cumulatively, the actions well might have dissuaded a reasonable worker not to lodge her complaint.[8] Together, the retaliatory actions caused a major alteration in Plaintiff's job in which she became overworked, unhappy, and at risk (and fearful) of losing her job. Accordingly, a reasonable jury could find that the conduct was materially adverse.

### 2. Causal Link

With regard to the actions that Plaintiff alleges Mikkola took in retaliation, there is sufficient evidence to at least raise factual issues as to whether a causal link existed between Plaintiff's complaints about Mikkola's conduct and his retaliatory actions.

---

7. For example, courts have declined to find "personality conflicts at work" or "snubbing by supervisors and co-workers" to be actionable under Title VII. *See* 1 B. Lindemann & P. Grossman, Employment Discrimination Law 669 (3d ed. 1996) (cited in *Burlington Northern*, 548 U.S. at 68, 126 S.Ct. 2405).

8. In applying the *Burlington Northern* test, it is logical and appropriate to consider the cumulative effect of all retaliatory actions rather than compartmentalizing them and evaluating them individually. *See, e.g., Sandres v. State of La.*, 2010 WL 3782122, at *9 (M.D.La. Sept. 3, 2010) ("a reasonable jury could find that all of the acts alleged by the plaintiff collectively could dissuade a reasonable worker from making or supporting a charge of discrimination"); *Devin v. Schwan's Home Serv., Inc.*, 491 F.3d 778, 787–88 (8th Cir.2007) ("Nothing in *White* pre-

cludes this court from considering an employer's actions cumulatively when determining whether a reasonable employee would be dissuaded from making a discrimination claim."); *Sanford v. Main Street Baptist Church Manor, Inc.*, 327 Fed.Appx. 587, 599 (6th Cir.2009) ("while some of the incidents alone may not rise to the level of an adverse employment action, the incidents taken together might dissuade a reasonable worker from making or supporting a discrimination charge"); *Apodaca v. Chertoff*, 161 Fed.Appx. 897, 900 (11th Cir.2006) ("In determining whether an adverse employment action occurred, the cumulative effect of several individual actions may be considered."). To hold otherwise would prevent remedies for retaliation in the form of "death by a thousand cuts," and would ignore the context-specific nature of the standard articulated in *Burlington Northern*.

First, Plaintiff has produced "at least some evidence that the decisionmakers had knowledge of [her] protected activity." *Manning*, 332 F.3d at 883 n. 6. Plaintiff testified that both Mikkola and an employee at Cricket's corporate offices knew about her complaint. (Moore Dep. at 281–82.) Furthermore, Plaintiff testified that she had already confronted Mikkola about his misconduct, so it is a reasonable inference that Mikkola knew Plaintiff would file a complaint about it. (*Id.* at 227–28.)

Second, there is sufficient evidence that the adverse employment actions were based at least in part on Plaintiff's protected conduct. The adverse actions by Mikkola took place in the days and weeks immediately following Plaintiff's complaint. As the Fifth Circuit recently held:

> [S]urely the less than 60 day period that elapsed here between the protected activity and an adverse action would have been sufficient for [plaintiff] to demonstrate a causal connection, and survive summary judgment.

*Jones v. Robinson Property Group, L.P.*, 427 F.3d 987, 995 (5th Cir.2005); *see also Swanson v. General Services Admin.*, 110 F.3d 1180, 1188 (5th Cir.1997) ("Close timing between an employee's protected activity and an adverse action against [her] may provide the 'causal connection' required to make out a prima facie case of retaliation."); *but see Ajao v. Bed Bath and Beyond, Inc.*, 265 Fed.Appx. 258, 265 (5th Cir.2008) (per curiam) ("temporal proximity of four months is not close enough, without additional supporting summary-judgment evidence, to establish a causal connection"). Although temporal proximity would not be sufficient if Defendant offered a "legitimate, nondiscriminatory reason that explains both the adverse action and the timing," *Swanson*, 110 F.3d

at 1188, Defendant has not done so in this case.

■ Moreover, Plaintiff has presented additional evidence of a causal connection between her protected conduct and the adverse actions. For example, Long testified that she was told by a co-worker that Mikkola was "trying to get rid of both [Plaintiff and Long]." (Long Dep. at 34.) Long also testified that Mikkola told her she should avoid telling Plaintiff about the company's laptop policy, and report Plaintiff's violations of that policy, with the purpose of getting Plaintiff fired. These and other pieces of contextual evidence of the adverse actions could lead to a reasonable inference that the actions were retaliatory. Thus, at a minimum, the evidence presented creates a fact issue as to whether a causal link exists, and summary judgment is inappropriate.

## VI. DAMAGES

■ Finally, Defendant argues that Plaintiff's discrimination and retaliation claims fail because she "has failed to demonstrate any injury or harm." (Doc. No. 14, at 20.) The Court disagrees. A plaintiff need not suffer "complete psychological debilitation in order for there to be a successful claim under Title VII." *Ross v. Double Diamond, Inc.*, 672 F.Supp. 261, 269 (N.D.Tex.1987). Among other things, Plaintiff has presented evidence that Mikkola's discriminatory conduct and the subsequent retaliation greatly offended her, negatively affected her job performance, led her to seek a transfer, and harmed her mental health. (*See, e.g.*, Moore Dep. at 196–201.) Defendant's arguments that Plaintiff did not suffer damages as a result of the alleged conduct amount to a factual dispute that is appropriately resolved by the jury. Accordingly, summary judgment is denied.

## VII. CONCLUSION

For the reasons discussed in this order, Defendant's Motion for Summary Judgment (Doc. No. 14) is **DENIED**.

**IT IS SO ORDERED.**